**BALLARD v. OCEAN ACCIDENT & GUARANTEE CO., Limited.**

No. 5722.

Circuit Court of Appeals, Seventh Circuit.

Nov. 20, 1936.

450

A. C. Wolfe and J. C. Bunge, both of La Crosse, Wis., for appellant.

Lawrence J. Brody, of La Crosse, Wis., and John F. Baker, of Milwaukee, Wis., for appellee.

Before EVANS, Circuit Judge, and LINDLEY and BRIGGLE, District Judges.

LINDLEY, District Judge.

Appellant sued in the District Court to recover from appellee the difference between $5,000, the amount of its policy issued to him, and a judgment for $9,179 obtained against him in a suit brought by Mike Spagl and Mary Spagl against both appellant and appellee for damages for injuries incurred in a collision with appellant's automobile, on the ground that appellee had negligently and carelessly failed to prepare for trial and defend the same. The District Court directed a verdict for defendant and entered judgment accordingly. This appeal followed.

On March 16, 1930, Spagl and his wife were proceeding easterly in a truck on a street in La Cross approaching State Highway 16, where there was a stop sign. Spagl was driving slowly, but whether he stopped for the crossing is disputed, though the evidence tends to a finding that he did not. He proceeded easterly across the highway. Appellant was then driving southerly on the state highway at approximately 35 miles an hour, on the wrong side of the road. He swung to the right, but not quickly or soon enough to avoid crashing into the Spagl truck and injuring Mrs. Spagl. She was taken to a physician, who, upon X-ray examination, found that one of the cervical vertebrae was broken. She had previously been a strong young woman, working both in the house and in the field. Apparently, thereafter, according to the evidence submitted to the trial court, she was unable to use one arm, was partially paralyzed on one side, and could do no work in the field and very little in the house. She testified that movement of her head was very limited and that she suffered pain constantly from the date of the accident until the trial in May, 1931.

Appellee carried $5,000 in insurance for appellant, who, promptly after the accident, notified appellee of the same. Its claim adjuster, Neilson, admitted to the bar, ten days later went to La Crosse, got a report from the company's local agent, and consulted the physician who had treated Mrs. Spagl. The doctor said the vertebra was broken and reported to appellee that Mrs. Spagl would undoubtedly have partial permanent disability. Neilson proceeded to the home of the Spagls and obtained a written statement from the husband in which the latter claimed to have stopped at the highway; but, according to the adjuster, Spagl admitted that he probably did not stop and that the accident was "fifty per cent." his fault. Neilson at that time procured a release from both, giving them a check for $275. Spagl could barely read and write; his wife had reached only the third grade in school.

Mrs. Spagl felt that $275 was not enough, did not cash the check, and consulted an attorney, who, on April 4, 1930, advised appellee that his clients had been fraudulently tricked into signing a release but indicated his willingness to reopen the matter for adjustment. He agreed to an immediate physical examination, under oath, of both Mary Spagl and Mike Spagl. The examination was made on July 17, 1930, and at approximately that time, the lawyer offered to settle the claim of both for $800. No reply was received, and suit was begun. Thereafter plaintiff offered to settle for $1,500. No reply was made, and the cause was finally set for trial. Directly before the day set, Spagl's attorney again offered to settle, this time for $4,500, saying that he thought he should have more, but that, in order to achieve a settlement, he was willing to accept $500 less than the amount for which the insurance company was liable. The offer was rejected.

At the trial counsel for appellee defended for both appellant and appellee. They waived the defense of contributory negligence, admitted negligence on the part of appellant, and defended solely upon the ground of validity of the release. The jury returned special verdicts, finding that the release had been obtained by fraud on the part of the adjuster and, as stipulated by counsel, that Ballard was guilty of negligence causing the injury, and returned a verdict of $9,080 and costs.

Appellant moved for a new trial upon the ground that Mrs. Spagl had falsely testified as to her injuries. Appellee promptly obtained affidavits of some eleven persons, who claimed to have seen Mrs. Spagl doing work in the field between the date of the injury and that of the trial. The court, however, denied the motion for new trial, obviously, to any one who has sat as a trial judge, because appellee had shown lack of diligence in failing to procure the evidence before the trial instead of thereafter. Equally as obvious, offers to settle for constantly increasing demands, as the date of trial approached, were red flags announcing growing strength of plaintiff's complaint of disability, and creating all the more reason for investigation as to plaintiff's injuries among her friends and neighbors. The motion for new trial was denied, judgment entered, and Spagl's attorney again offered to settle for $4,500. Again the offer was refused. An appeal was taken to the Supreme Court, which, without opinion, affirmed. Spagl v. Ballard, 208 Wis. 689, 242 N.W. 425. Appellee paid the amount of its liability of $5,000, leaving a deficiency judgment against appellant of some $4,200.

Thereupon appellant brought this suit to recover the deficiency, upon the ground that the appellee was negligent, first, in preparing the defense; second, in waiving the defense of contributory negligence, in admitting negligence on the part of appellant and in relying solely upon the question of validity of the release, obtained for $275; and, third, in failing to settle the case before trial or for $4,500 after judgment had been entered.

At the trial of the present cause, the attorney for appellee, who defended the personal injury action, testified that plaintiff's attorney attempted to settle with him before trial for $1,500; that at that time he knew what each of the doctors had reported; that he believed the woman was on the road to recovery and that no jury would give her more than $3,500; that he waived the defense of contributory negligence and all defense against the charge of negligence against appellant; that he relied solely upon the release; that there was absolutely no chance to save appellant from a finding of negligence; that upon appellant's own statement, made in the examination before the trial, any defense of negligence "had flown out of the

window." Thus, when the cause came to trial, defendant's counsel had been advised by two reputable physicians that a vertebra in the cervical region was broken; he knew that there was a probable permanent disability, at least partial in character, and that he had no defense to the charge of negligence of appellant. He was convinced that he had no defense in the way of contributory negligence on the part of plaintiff and waived that defense. He felt that a jury might go as high as $3,500 and maybe further. His sole defense was the validity of a release for $275, against damages probably amounting to $3,500. In this situation he declined all offers of settlement and proceeded to trial. In our opinion these undisputed facts, taken from his own statement, raised a question for the jury as to whether or not he was negligent and failing in good faith in his defense of the cause.

Furthermore, there was a serious question as to whether he was justified in waiving the defense of contributory negligence. The only eyewitness, other than the parties themselves, made a written statement to the effect that Spagl did not stop before reaching the highway. Neilson, the adjuster, had been told by Spagl that he did not know whether he stopped but that he thought it was a case of "fifty-fifty." Appellant himself testified that he saw Spagl coming; that he assumed Spagl would stop; that he never saw him stop and that he (appellant) tried to avoid the accident. There was serious doubt of any action upon the part of Mrs. Spagl negativing contributory negligence.

These facts, it seems to us, raised a question for the jury as to negligence in the defense. If counsel was justified in his position that there was no defense to the charge of negligence; that there was no substantial evidence of contributory negligence; if, as he said, he believed plaintiff's action would probably result in a verdict of $3,500 and knew that he could settle for $1,500 rather than submit the trial to a jury upon the validity of a release for an inadequate consideration, then the question of his good faith or negligence in proceeding to trial under such circumstances was a question for the jury.

Bearing upon counsel's frame of mind, it should be observed that he testified that he did not think the case was worth more than $3,500, but that he was "not interested in the verdict but in the question of law, pure and simple."

Furthermore, if there was evidence procurable within a few days after the trial, from a large number of witnesses, as to the ability of the plaintiff to work during the fifteen months preceding the trial, with ample time to prepare the defense, the question of whether it was negligence to fail to obtain such evidence prior to the trial likewise became one of fact. Counsel testified that no investigation among the neighbors was made before the trial because he had no notice that Mrs. Spagl would complain that she was unable to do any work, yet the pleading advised him of just such a claim upon her part. Furthermore, he says, he knew there was a serious accident and that she had a fractured vertebra.

That the trial court in the personal injury cause deemed the insurance company negligent is shown by its opinion in denying the motion for new trial, wherein it said: "These affidavits that within a few weeks after the trial seem so easily available, in themselves are the best proof of how little diligence was used prior to the trial to procure such evidence. The rule in that regard not only requires that the evidence be material, but must be newly discovered and the motion papers must show on their face the evidence was not procured for use at the trial and what diligence was used, if any, to secure that or similar testimony. The record on this motion is all the other way. It shows an utter lack of any effort to procure such testimony or to make any investigation in the neighborhood in which Mary Spagl lived, as to her condition or her ability to perform labor."

We do not find it necessary to discuss the testimony further, though in many other particulars there was evidence making it mandatory, in our opinion, to submit the cause to the jury. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L. Ed. 720; Lumbra v. United States, 290 U.S. 551, 553, 54 S.Ct. 272, 273, 78 L.Ed. 492, 495.

■ Appellee raises the question of whether the proper test of its liability is one of good faith or of negligence. Unless the law is to the contrary of what the state court has held it to be, it is obviously conducive to uniformity that the

federal court follow the rule of the state court. It is not desirable that litigants shall have different rights in the state and federal courts, unless such situation is clearly necessitated by the law of the latter courts. 91 A.L.R. 751, 752; 71 A.L.R. 1109, 1110.

We find no precedent upon the immediate question in the federal courts in this circuit, but the law seems to be well settled in the state of Wisconsin. In Wisconsin Zinc Co. v. Fidelity & Deposit Co., 162 Wis. 39, 155 N.W. 1081, 1086, Ann.Cas.1918C, 399, the court held: "That the insurer, having agreed to assume and conduct the defense of actions brought to recover damages for injuries, assumes the obligation of conducting such defense with ordinary care, skill, and prudence, and that if it fails to do so, it is guilty of actionable negligence for which there may be a recovery." In the later case of Hilker v. Western Automobile Insurance Co., 204 Wis. 1, 13, 231 N.W. 257, 259, 235 N.W. 413, the Supreme Court of Wisconsin concluded that the confusion of the words "negligence" and "bad faith" is merely tautological. There, as here, the defendant company, acting as agent of the plaintiff, contracted to take complete and exclusive control of a suit against the assured. The court said: "Certainly, where an insurance company makes such a contract, it, by the very terms of the contract, assumes the responsibility to act as the exclusive and absolute agent of the assured in all matters pertaining to the questions in litigation, and, as such agent, it ought to be held to that degree of care and diligence which an ordinarily prudent person would exercise in the management of his own business; and if an ordinarily prudent person, in the exercise of ordinary care, as viewed from the standpoint of the assured, would have settled the case, and failed or refused to do so, then the agent, which in this case is the indemnity company, should respond in damages."

█ Thus, under the Wisconsin law, an insurance company is bound, in the good-faith performance of its contract, to exercise that degree of care and diligence which a man of ordinary care and prudence would exercise in the management of his own business, were he investigating and adjusting claims. See American Mutual Liability Insurance Company v. Cooper (C.C.A.5) 61 F.(2d) 446; 71 A.L.R. 1487, 1488. If the insurance company fails to meet this standard, it is guilty of negligence in the performance of its contract and becomes liable, upon that ground, to the assured for the excess over the policy limit, irrespective of any fraud or bad faith upon its part. Attleboro Mfg. Co. v. Frankfort Marine A. & P. G. Ins. Co. (C.C.A.1) 240 F. 573; Commercial Casualty Co. v. Fruin-Colnon Contracting Co. (C.C.A.) 32 F.(2d) 425; Maryland Casualty Company v. Elmira Coal Company, 69 F.(2d) 616 (C.C.A.8).

█ Exception is taken to the refusal to admit the decision of the trial judge in the personal injury cause upon motion for new trial, but appellant concedes in its brief that the decision was received as a part of another exhibit. Consequently, there can be no error in connection with the temporary exclusion, for, the evidence having been subsequently admitted, any possible error arising from its original exclusion was cured. The same is true of the refusal to permit Adjuster Neilson to testify as to whether he advised the company not to make a settlement. He subsequently answered this question in full. Any possible error in this connection was thereby avoided. The same is true as to the refusal to permit the attorney to answer a question as to whether or not his motive was a desire to vindicate the claim agent. Later, the witness testified that his actions were inspired by no such motive.

There having been substantial evidence to submit to the jury, evidence that we do not feel a trial judge could say as a matter of law was insufficient to support a verdict, the judgment is reversed for a new trial.