[No. 39281.    Department Two.    May 23, 1968.]

RALPH VACCA, *Respondent*, v. STEER, INC., *Appellant.**

*Carson F. Eller* (of *Griffin, Boyle & Enslow*), for appellant.

NEILL, J.—Plaintiff seeks monetary redress for damages to his vegetable crops caused by trespassing cattle, and reimbursement for his expenses in corralling and caring for the marauders. Defendant appeals from a judgment entered against it in the sum of $2,830 and costs.

Defendant does not challenge the fact of the trespass by the some 15 head of cattle, nor does it challenge the amount of the judgment. Rather, it is defendant's contention that it

*Reported in 441 P.2d 523.

is not the party responsible for the damage to plaintiff's vegetable crops nor for his care of the animals.[1]

Defendant is a nonprofit corporation which acts as a sort of "middle man" in a plan designed to increase the benefits of gifts for foreign mission projects of all churches. The advertising and solicitation material circulated by defendant set forth the plan and identified it with the language "a stewardship partnership plan" whereby solicitation of cash gifts for missionary purposes is made. With the cash donation, defendant would purchase or cause to be purchased cows or steers and would then solicit a farmer to feed and care for the animals as his donation to the missionary project. At such time as a steer was ready for market or a cow had calved and the calf was ready for market, the farmer would market the animal or animals on behalf of Steer, Inc., and would remit the entire proceeds back to defendant which, in turn, took 15 per cent of the "gain" for management and remit the balance to the mission specified by the original cash donor.

Pursuant to such plan, defendant received a cash donation, purchased 33 head of cattle therewith, and placed them with a Mr. Glasscock who was farming near Auburn. Mr. Glasscock failed to properly feed and care for the cattle and kept them in a pasture enclosed by inadequate fences. The fencing consisted of two strands of barbed wire on posts some 50 feet apart, to which was also attached a single wire electric fence. The electric fence was not connected to the power and was on the ground in many places. On at least five occasions during August, September and October, 1963, cattle escaped from the Glasscock enclosure and trespassed upon the cauliflower and carrot producing lands of the plaintiff. On the occasion of the first four trespasses, plaintiff rounded up the cattle and returned them to the Glasscock enclosure. On the occasion of the

---

[1]Although it is not entirely clear from the record, we assume that the parties and the trial court tried this case on the basis that the plaintiff's lands and the Glasscock premises were within a stock restricted area and thus the burden was on the owner or possessor of the cattle to enclose them. RCW 16.24.010 and 16.24.065.

fifth trespass, the plaintiff impounded the cattle on his premises, erected a corral, and fed the cattle for 90 days. Prior to the impounding of the cattle by plaintiff, he advised a Seattle field director of defendant of the repeated trespasses and requested that action be taken to remedy the situation. Defendant, by letter from the field director, dated September 7, 1963, acknowledged notice of the trespass of the cattle and the damage to crops of plaintiff and stated: "We are proceeding with plans to have the cattle removed from that pasture unless steps are taken at once to make the fence safe. We deeply regret the inconvenience this has caused you and assure you again we will do all in our power to see that the fence is made safe or that the cattle are removed." Thereafter, on October 6, 1963, the fifth trespass occurred and the cattle were impounded and maintained by plaintiff. On January 5, 1964, representatives of defendant obtained possession of the animals from the plaintiff and sold them in a sales yard at Auburn.

In entering judgment for plaintiff, the trial court found that the defendant was the owner of the cattle; was in control of the cattle; and that the damage caused by the cattle resulted from their escaping from an enclosure with inadequate and improperly maintained fences. It appears from the trial court's oral decision that its finding of liability against defendant was based either on agency or on the theory that a partnership existed between defendant and Mr. Glasscock. However, the findings of fact do not contain either statement. Rather, the court found that

the cattle owned by the defendant left the premises wherein they were pastured and entered the premises of the defendant [sic] causing damages to the growing crops of the plaintiff. That the defendant was negligent in maintaining the fences, and the fences were down on the ground and were not sufficient to contain the cattle in the premises of the defendant; that the direct cause of the cattle leaving the premises of the defendant and trespassing and entering the fields of the plaintiff, was due to the inadequate and poorly maintained fences of the defendant. Finding of fact No. 3.

■ In view of the contention made by defendant, we have read the trial court's findings in conjunction with its oral decision. *Northern Pac. Ry. v. Washington Util. & Transp. Comm'n*, 68 Wn. 2d 915, 416 P.2d 337 (1966).

Defendant assigns as error findings by the trial court (1) that defendant was negligent; (2) that defendant had control over the action and control of Mr. Glasscock; and (3) that defendant and Mr. Glasscock were partners. As we have already indicated, the findings of fact signed by the trial court do not contain any finding of partnership.

■ It is clear from the record that the cattle were not being kept on premises of the defendant and we agree that the record does not support a finding that a partnership existed between defendant and Mr. Glasscock. We further agree with defendants' contention that it was not in control of the actions of Mr. Glasscock. However, we believe these contentions of defendant are not determinative since we will affirm the judgment of the trial court if it can be sustained on any theory. *Kirkland v. Steen*, 68 Wn.2d 804, 810, 416 P.2d 80 (1966).

■ Although the relationship between Mr. Glasscock and defendant is somewhat unusual and does not readily lend itself to established legal classifications, it would appear that, at the very least, Mr. Glasscock occupied the status of a gratuitous bailee in caring for defendant's cattle. The rules governing a bailor's liability for injury to third parties caused by the bailed articles are well summarized in *Hammerbeck v. Hubbard*, 42 Wn.2d 204, 211, 254 P.2d 479 (1953), a case factually similar to the instant case:

> A bailor not in control of the subject of the bailment is liable to a third person negligently injured thereby only in case he himself, or someone acting for him, has been negligent in respect of some duty owed to the person injured. The relation of bailor and bailee is not, as such, within the doctrine of *respondeat superior*. The bailor cannot be held responsible to a third person for injuries resulting from his bailee's negligent use of the bailed property, in the absence of any control exercised by the bailor at the time of the negligence. Such a liability could only be sustained on the theory that a bailor stands in

the relation of principal or master to the bailee, and such a relationship does not exist in the ordinary case of bailment. 6 Am. Jur. 410, Bailments, §§ 312 and 313.

The Hubbards [bailees] are liable to respondent for resulting damages to him by permitting the horse to break outside of the fence and stray along the highway. Appellant, as bailor, did not exercise any control over the Hubbards, nor did they act for her, with respect to the horse. She would be liable if she left the horse with the bailees, knowing, or if she had reasonable grounds to believe, that it would break out and stray on the road. But there is absolutely no testimony to indicate that she knew that the fence was insecure or unwatched, or that the horse had any propensities to stray.

See, also, 3 C.J.S. *Animals* § 22 (1936); 8 Am. Jur. 2d *Bailments* §§ 258 and 259 (1963).

■ In the case at bar, defendant, as bailor, clearly did not stand in the relation of principal or master to Mr. Glasscock. Defendant exercised virtually no control over him with respect to the care and ultimate sale of the cattle. Moreover, until September 7, 1963, defendant neither knew nor had reasonable grounds to believe that Mr. Glasscock was failing to properly care for the cattle. Therefore, under the rule announced in *Hammerbeck v. Hubbard, supra,* defendant cannot be held liable for any injury or damage occurring prior to the aforementioned date.

On September 7, 1963, however, defendant was directly informed by plaintiff that Mr. Glasscock was not properly caring for the cattle and that the cattle had repeatedly strayed on to plaintiff's land. On the same day, defendant's representative wrote the letter to plaintiff, a portion of which is quoted above. At this point, defendant owed a duty to plaintiff either to repair the fence or to remove the cattle within a reasonable length of time; and defendant is liable for any damages thereafter resulting from the negligent failure to perform that duty.

There is no absolute liability on defendant as owner of the cattle to respond in damages for their trespass. *Bly v. McAllister*, 58 Wn.2d 709, 364 P.2d 500 (1961). See *Scanlan v. Smith*, 66 Wn.2d 601, 404 P.2d 776 (1965). Further, as

already indicated, we do not agree that there is any vicarious liability arising from the relationship between defendant and Mr. Glasscock. Rather it is the negligence of defendant in failing to remedy the defalcation of Mr. Glasscock within a reasonable time after it received notice thereof which creates its liability to plaintiff.

However, neither the statement of facts nor the findings of the trial court discloses whether the judgment entered included damage to plaintiff's crops caused by trespasses prior to a reasonable time after September 7, 1963. Therefore, we remand the case for findings thereon and judgment shall be entered for the plaintiff for such portion of the $2,830 as shall have been caused by trespass of the cattle occurring subsequent to a reasonable time after September 7, 1963. Plaintiff-respondent did not appear in this court, so is not entitled to costs; defendant-appellant shall bear its own costs here.

FINLEY, C. J., HILL, HUNTER, and HAMILTON, JJ., concur.