[No. 267-40420-1. Division One—Panel 2. August 3, 1970.]

NORMAN E. TYLER, *Respondent,* v. GRANGE INSURANCE ASSOCIATION, *Appellant.*

*Murray, Dunham & Waitt* and *Wayne Murray,* for appellant.

*Ross & Schweinler, Lawrence M. Ross, Burkey, Marsico, Rovai & McGoffin,* and *Robert L. Rovai,* for respondent.

UTTER, J.—The Grange Insurance Association appeals from a judgment against them for $29,087.40 entered in favor of Norman E. Tyler, their insured, by the court sitting without a jury. That sum represents the difference between the policy limits of Norman Tyler and the amount of a verdict rendered against him, plus interest. The issues

on appeal are whether the court's findings of fact and con-
clusions of law are supported by the record and the nature
of the duty owed by Grange to Tyler.

In 1962, Gordon L. Tyler and Norman E. Tyler, who are
brothers, went out for an evening of bowling. They later
stopped at a tavern and on the way home the car, driven by
Norman Tyler, left the road and collided with a tree. Gor-
don Tyler was seriously injured as a result of the accident.[1]

An investigation of the accident was made shortly there-
after by Grange. Grange took a sworn statement from Nor-
man Tyler regarding the circumstances of the accident and

---

[1]Testimony of Dr. Floyd Myrick, the physician and surgeon for
Gordon Tyler:

His worst injuries . . . consisted of a depressed skull fracture
. . . destruction of all the bones supporting the right eye-socket;
the nose was separated from the base of the skull; the upper jaw,
. . . was split vertically and transversely, and also split down
the center of the hard palate; the mandible was fractured . . .
The zygoma, . . . was fractured and displaced backward about
three-quarters of an inch. He had a large protuberance just immedi-
ately in front of his ear, which was his cheek bone.

. . .
. . . He has two-inch angular fragments, the point of both
these depressed into the brain, the frontal lobe on the right side.
There is a fracture from the nose extending to the left eye-socket,
from the nose extending from the right eye-socket, . . . The
nose is separated from the right cheek here [pointing to X-
ray]. . . . The other fractures consisted of a crush injury to the
socket of the right hip, with several fractures in this bone. . . .
and there were fractures through the opposite side of the pelvis,

. . .
. . . In addition, . . . there was a fracture of the left
collarbone, . . .

. . .
. . . [T]here is a fracture of the supporting malleolus, or the
supporting mortise to the ankle-joint. . . . In addition, he had
an extensive crush injury to the soft tissue outside of the ankle,
which subsequently proved to be non-viable, or completely sepa-
rated tissue, and had to be skin-grafted at a later date.

. . .
. . . [T]here was some obvious brain injury. At the time the
fragments were removed, there was some brain substance in the
fracture site.

[T]hese injuries left Gordon Tyler with severe permanent disabil-
ities.]

from others who had knowledge of the conduct of the parties prior to the accident.

The following facts were all embodied in findings of fact entered by the trial court, after hearing the testimony, and are the findings to which error is assigned by Grange: Subsequent to taking Norman E. Tyler's statement on March 24, 1962, no significant activity occurred in the handling of the claim of Gordon Tyler until September, 1962, 23 days prior to trial when Norman Tyler's deposition and his brother's were taken. At that time, some reference was made between counsel for Gordon Tyler and the insured's attorney, relative to settlement of the claim, but the reference did not amount to or constitute negotiations for the purpose of, or in an effort to compromise the claim of Gordon L. Tyler.

On October 4, 1962, the claim of Gordon Tyler was tried, resulting in a verdict and judgment in favor of Gordon Tyler and against Norman Tyler for $50,000. At no time in the proceedings or prior to the conclusion of the case on appeal, did Grange Insurance offer to negotiate or compromise the claim of Gordon L. Tyler.

At all times during the pendency of Gordon Tyler's claim, Grange, through its claims manager, demonstrated the handling of the claim was singularly lacking in written verification of the opinions and conclusions of the defendant or its chosen attorney. A decision was made by Grange during the pendency of the claim of Gordon Tyler, not to attempt to negotiate a settlement or to obtain other or additional medical information relative to the injuries sustained by Gordon Tyler, other than that provided by his deposition. Their decisions were the sole responsibility of Grange.

In its oral opinion, the court amplified its findings regarding Grange's handling of the investigation of the claim. The court there stated,

[I]t's a little hard for me to believe, . . . that a bona fide determination as to the possible damages which might be recoverable if the case was allowed to go to the jury could be properly assessed relying solely upon the

statement of Norman E. Tyler, . . . and Gordon Tyler, . . . even though Gordon Tyler was an experienced adjuster, particularly in view of the type of injuries which were involved. The file . . . does not contain, . . . nor was there submitted any evidence indicating that even the hospital records at the Burien Hospital were examined or copies obtained for . . . study by . . . [their attorney] or . . . [claims manager] or a doctor of their choice and at no time during the case, including the trial, was any such preparation indulged in. . . . [I] am going to have to assume that . . . [their attorney] felt . . . bound by the injuries of the plaintiff . . . and . . . there was no way . . . [to] refute them. . . . Knowing that it seems . . . even a greater obligation arose to determine just what these injuries and the resultant disability, be they permanent or otherwise, would create by way of damage liability. . . . I think that there was a duty on the part of the company, and its agent, . . . to be certain . . . they were in a position to apprise themselves as to the extent not only of the immediate injuries, but of the permanency of them, before adamantly making no effort to settle.

In determining what the findings of fact are in the case, the oral opinion of the trial court may be used to supplement the written findings of fact where they are not inconsistent. *Vacca v. Steer, Inc.*, 73 Wn.2d 892, 441 P.2d 523 (1968); *El Cerrito, Inc. v. Ryndak*, 60 Wn.2d 847, 376 P.2d 528 (1962).

The court found the damages previously set forth and, based on its findings of fact, entered conclusions of law. These held regardless of the opinion arrived at by Grange Insurance that no liability existed in the action by Gordon Tyler against Norman Tyler or that, in any event, an adverse verdict would be within the insurance coverage, Grange had a duty in view of their acceptance of the nature and extent of the injuries sustained by Gordon Tyler, as claimed by him, to explore settlement and make a meaningful offer of settlement sometime prior to, after its motion for nonsuit was denied, or other time during, or subsequent to the trial and prior to the conclusion of the appeal.

The court further concluded the failure of Grange Insurance to make a meaningful offer of settlement was the failure to exercise good faith and was negligence on the part of the insurance company and that Grange did not, in good faith, give equal consideration to the interests of Norman Tyler in arriving at a decision not to attempt to settle or compromise the claim of Gordon Tyler.

The trial record indicates that shortly before the trial, Grange was advised Gordon Tyler was prepared to settle the claim for the policy limits of $25,000. This information was conveyed to Norman Tyler the night before the trial when he was advised of his right to have personal counsel. He indicated he wished to have Grange defend, but also requested the case be settled. Grange did not respond to the communication of Gordon Tyler or make any attempt to negotiate a settlement.

The case was tried on October 4, 1962, at which time Grange learned of the full extent of Gordon Tyler's medical injuries, including the brain damage. The existence of the brain damage was unknown to Gordon Tyler prior to the trial and was a fact he could not have been aware of at the time of his deposition.

The findings of fact were made after listening to disputed testimony on all issues in trial. We have examined the record and believe the findings are supported by substantial evidence. We cannot disturb them on appeal.

■■ The typical liability insurance policy contains no express provision requiring the insurer to settle and gives the company control over the defense of the claim and control over the decision concerning opportunities of settlement within policy coverage. The existence of this control of defense and settlement is a necessity of insurance practice, but, with this power given the insurer, the courts have stated there is a duty sounding in tort (*Murray v. Mossman*, 56 Wn.2d 909, 355 P.2d 985 (1960)) requiring the insurer to give consideration to the interests of the insured, when negotiating a settlement.

Washington has held the insurer is liable if he is guilty

of either bad faith or negligence in failing to settle a claim against the insured within its policy limits. *Murray v. Mossman, supra; Evans v. Continental Cas. Co.*, 40 Wn.2d 614, 245 P.2d 470 (1952); and *Burnham v. Commercial Cas. Ins. Co.*, 10 Wn.2d 624, 117 P.2d 644 (1941).

When courts speak of liability for bad faith or the duty to use good faith, they are usually referring to the same obligation. Generally speaking in the context of these cases, good faith means being faithful to one's duty or obligation; bad faith means being recreant thereto. *Cernocky v. Indemnity Ins. Co. of North America*, 69 Ill. App. 2d 196, 216 N.E.2d 198 (1966). The court, in *Murray*, uses the terms interchangeably and so do we.

The duty to refrain from bad faith or, alternately, to use good faith is said in our state to be founded on what has been termed a fiduciary relationship existing between the insurer and the insured. *Murray v. Mossman, supra.*[2]

Some jurisdictions have attempted to define the liability of the insurer for bad faith to require an actual intent to mislead or deceive another and stated there would be no liability in a particular transaction unless there was conduct equivalent to fraud or actual bad faith. *Johnson v. Hardware Mut. Cas. Co.*, 108 Vt. 269, 187 A. 788 (1936). The basis of liability of the insurer is not this narrowly founded in Washington. The recognition in *Murray* that the duty of the insurance company springs from a fiduciary relationship implies a broad obligation of fair dealing.

The court in *State Farm Mut. Auto. Ins. Co. v. White*, 248 Md. 324, 236 A.2d 269 (1967), recognized that for liability

---

[2]The California courts have stated the nature of the obligation as follows:

[I]n every contract, including policies of insurance, there is an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefits of the agreement; . . . that the implied obligation of good faith and fair dealing requires the insurer to settle in an appropriate case although the express terms of the policy do not impose the duty; . . .

*Crisci v. Security Ins. Co.*, 66 Cal. 2d 425, 429, 58 Cal. Rptr. 13, 16, 426 P.2d 173, 176 (1967).

to exist on the part of the insurer, the term "good faith" did not tend to connote or imply by use of that term that dishonesty, misrepresentation, deceit, or a species of fraud must be present and stated that in applying the good faith theory, the courts found the presence of a number of acts affected the "good faith" posture of the insurer: The severity of plaintiff's injury giving rise to the likelihood of a verdict greatly in excess of policy limits; lack of proper and adequate investigation of the circumstances surrounding the accident; lack of skillful evaluation of plaintiff's disability; failure of the insurer to inform the insured of a compromise offer within or near the policy limits; pressure by the insurer on the insured to make a contribution towards a compromise settlement within the policy limits as an inducement to settlement by the insurer; and actions which demonstrate greater concern for the insurer's monetary interest than the financial risk attendant to the insured's predicament.

Additional acts affecting the good faith posture of the insurer are the strength of the injured claimant's case on the issues of liability and damages, the insurer's rejection of the advice of its own attorney or agent, and the amount of financial risk to which each party is exposed in the event of a refusal to settle. *Brown v. Guarantee Ins. Co.*, 155 Cal. App. 2d 679, 319 P.2d 69, 66 A.L.R.2d 1202 (1957). In discussing the basis for a determination of good faith, the California court in *Crisci v. Security Ins. Co.*, 66 Cal. 2d 425, 429, 426 P.2d 173, 176, 58 Cal. Rptr. 13, 16 (1967) stated:

> The language used in the cases, however, should not be understood as meaning that in the absence of evidence establishing actual dishonesty, fraud, or concealment no recovery may be had for a judgment in excess of the policy limits. . . . Liability is imposed not for a bad faith breach of the contract but for failure to meet the duty to accept reasonable settlements, a duty included within the implied covenant of good faith and fair dealing.

In recognizing the existence of two tests to determine the

liability of an insurer, a number of states have noted the two tests of "good faith" and "negligence" have tended to coalesce. Many states which have, in terms, rejected the "negligence" test agree, nevertheless, that the insurer's negligence is a relevant consideration in determining whether or not it exercised the requisite good faith. *Gaskill v. Preferred Risk Mut. Ins. Co.*, 251 F. Supp. 66 (D.C. Md. 1966); *State Farm Mut. Auto. Ins. Co. v. White, supra;* 7 Am. Jur. 2d *Automobile Insurance* § 156 (1963).

Other jurisdictions, in addition to our own state, have indicated the insured may recover from the insurer for damages occasioned by failure to settle within the policy limits if that failure is attributable to either bad faith or negligence.[3]

Where courts have adopted both standards, the finder of the fact is entitled to find liability on the part of the company on the theory of either negligence or bad faith, independent of the other. *Ballard v. Ocean Accident & Guar. Co.*, 86 F.2d 449 (7th Cir. 1936). The court there stated:

> If the insurance company fails to meet this standard [reasonably prudent man test], it is guilty of negligence in the performance of its contract and becomes liable, upon that ground, to the assured for the excess over the policy limit, irrespective of any fraud or bad faith upon its part.

The duty to use ordinary care in the defense of a suit is also recognized even by jurisdictions following the "bad faith" rule. *Georgia Cas. Co. v. Mann*, 242 Ky. 447, 46 S.W.2d 777 (1932). It has also been recognized that negligence in investigation which leads to a mistake in failing to settle is also a breach of this duty of ordinary care in

---

[3]*Ballard v. Ocean Accident & Guar. Co.*, 86 F.2d 449 (7th Cir. 1936); *Andrews v. Central Sur. Ins. Co.*, 271 F. Supp. 814, (D.S.C. 1967), *aff'd sub nom; Powell v. Prudence Mut. Cas. Co.*, 88 Ill. App. 2d 343, 232 N.E.2d 155 (1967); *Cernocky v. Indemnity Ins. Co. of North America*, 69 Ill. App. 2d 196, 216 N.E.2d 198 (1966); *Dumas v. Hartford Accident & Indem. Co.*, 94 N.H. 484, 56 A.2d 57 (1947); *Douglas v. United States Fid. & Guar. Co.*, 81 N.H. 371, 127 A. 708, 37 A.L.R. 1477 (1924); *G. A. Stowers Furniture Co. v. American Indem. Co.*, 15 S.W.2d 544 (Tex. Comm'n App. 1929).

defense of this suit. R. Keeton, *Liability Insurance and Responsibility for Settlement*, 67 Harv. L. Rev. 1136, 1140.[4] Keeton points out, however:

The "bad faith rule" supplemented by this duty regarding defense is not the exact equivalent of the "negligence rule," even in those cases where negligence in investigation is a cause of the mistake in not settling. The inadequacy of investigation which is a cause of mistake in failing to settle would not necessarily be a factor contributing materially to the adverse trial result; it is conceivable that in some cases the breach of the duty regarding defense would not be a legal cause of the insured's loss in excess of policy limits, though the same inadequacy of investigation would be actionable if, through application of a negligence standard to the duty to settle, it were a breach of that duty.

The duty of the insurance company, whether good faith or ordinary care, or both, as in our state, involves the question of whether the company must give equal consideration to the insured's interest. The question of the weight to be given the interests of the insured by the company, when their interests conflict, requires the courts to give concrete effect to the terms "good faith" and "negligence."

In examining the weight to be given the interest of the insured by the company when the good faith standard is used, if in fact the obligation of the company is founded on a true fiduciary relationship to the insured, it could be argued a company must always sacrifice its interest to that of the insured. *Williams v. Queen Fisheries, Inc.*, 2 Wn. App. 691, 469 P.2d 583 (1970); *Zumwalt v. Utilities Ins. Co.*, 360 Mo. 362, 228 S.W.2d 750 (1950); *Tyger River Pine Co. v. Maryland Cas. Co.*, 170 S.C. 286, 170 S.E. 346 (1933). The practical result of this reasoning would be to hold the company strictly liable for the excess judgment, if it refused a settlement offer within the policy limits, inasmuch as it is almost always in the insured's best interest if the case is settled within policy limits.

This view has been urged in dicta found in *Crisci v.*

---

[4] The article shall hereinafter be referred to as Keeton.

*Security Ins. Co., supra* and some commentators. *See* comment, *Crisci's Dicta of Strict Liability for Insurer's Failure to Settle: A Move Toward Rational Settlement Behavior*, 43 Wash. L. Rev. 799 (1968); Comment, *Approaching Strict Liability of Insurer for Refusing to Settle Within Policy Limits*, 47 Neb. L. Rev. 705 (1968). If the duty of the insurer to the insured is founded on a true fiduciary duty, as stated in *Murray v. Mossman*, 56 Wn.2d 909, 355 P.2d 985 (1960), strong arguments can be made for strict liability.

The courts have been reluctant, however, to hold companies strictly liable for excess verdicts and this may account for the statement that the relationship of the company to the insured is only "somewhat of a fiduciary one . . ." 7A J. Appleman, Insurance Law and Practice § 4711 (1962). *United States Fid. & Guar. Co. v. Evans*, 116 Ga. App. 93, 156 S.E.2d 809, 811 (1967).

Allowing a company, on the other hand, to consider its own interests first would be akin to asking the cat to guard the canary and the company would never be liable for an excess verdict unless it could be said its own interests demanded a settlement and it failed to consider those interests.

The conclusion reached by a growing number of cases is both the interests of the insured and the insurer must be given equal consideration and the only practical test by which to apply this standard is to have the insurer consider the total risk in deciding whether or not to accept a settlement offer, without regard to who is bearing what portion of that risk.[5]

---

[5]*Crisci v. Security Ins. Co.*, 66 Cal. 2d 425, 58 Cal. Rptr. 13, 426 P.2d 173 (1967); *Kinder v. Western Pioneer Ins. Co.*, 231 Cal. App. 2d 894, 42 Cal. Rptr. 394 (1965); *United States Fid. & Guar. Co. v. Evans*, 116 Ga. App. 93, 156 S.E.2d 809, *aff'd*, 223 Ga. 789, 158 S.E.2d 243 (1967); *Murach v. Massachusetts Bonding & Ins. Co.*, 339 Mass. 184, 158 N.E.2d 338 (1959); *Bowers v. Camden Fire Ins. Ass'n*, 51 N.J. 62, 237 A.2d 857 (1968); *American Fid. & Cas. Co. v. L. C. Jones Trucking Co.*, 321 P.2d 685, 687 (Okla. 1957); *Kuzmanich v. United Fire & Cas. Co.*, 242 Ore. 529, 532, 410 P.2d 812, 813 (1966); *Radcliffe v. Franklin Nat'l Ins. Co.*, 208 Ore. 1, 298 P.2d 1002 (1956).

In the absence of a holding by our state that application of the fiduciary obligation principal demands a conclusion there is strict liability on the part of the insured, we adopt the "no limit" test as the best means of determining whether the interests of the insurer and the insured have been given equal consideration. This rule should be applied whether the insurer is being judged by either a negligence or good faith standard.[6] This is supported in Appleman, at § 4712, where he states:

> The insurer's duty to act diligently and in good faith extends up to the full limits of the policy and beyond. Good faith requires that the insurer make its decision as to settlement or defense of the suit as if no policy limit of liability existed, . . .

The specific conclusion of the trial court was that in view of Grange's acceptance of the nature and extent of the injuries sustained by Gordon Tyler, it had a duty to explore settlement and make a meaningful offer of settlement sometime prior to, after its motion for nonsuit was denied, or other time during or subsequent to the trial and prior to

---

[6]Applying this test to the negligence rule, a suggested instruction in Keeton, at page 1147, stating the combination of the equal consideration and negligence aspects of this standard reads as follows:

> With respect to the decision whether to settle or try the case, the insurer, acting through its representatives, must use such care as would have been used by an ordinarily prudent insurer with no policy limit applicable to the claim. The insurer is negligent in failing to settle if, but only if, such ordinarily prudent insurer would consider that choosing to try the case (rather than to settle on the terms by which the claim could be settled) would be taking an unreasonable risk—that is, trial would involve chances of unfavorable results out of reasonable proportion to the chances of favorable results.

*Dumas v. Hartford Accident & Indem. Co.*, 94 N.H. 484, 56 A.2d 57 (1947); *Radcliffe v. Franklin Nat'l Ins. Co. of N.Y.*, 208 Ore. 1, 298 P.2d 1002 (1956).

Following the same approach where good faith is also in question, Keeton suggests an instruction which reads:

> With respect to the decision whether to settle or try the case, the insurance company must in good faith view the situation as it would if there were no policy limit applicable to the claim.

*Kinder v. Western Pioneer Ins. Co.*, 231 Cal. App. 2d 894, 42 Cal. Rptr. 394 (1965).

the conclusion of the appeal and that the failure to make this meaningful offer was both the failure to exercise good faith and negligence on the part of the insurance company.

Grange criticizes the ambiguity of that part of the standard set out by the trial court, requiring it to make "meaningful offer of settlement."

We do not decide, under the facts of this case, whether or not this was the proper standard for Grange, inasmuch as it was not necessary for the trial court to extend its duty this far to find liability.

■ The insurer is liable for at least a failure to negotiate in good faith, if there is a lack of skillful evaluation of the injured party's disability. *State Farm Mut. Auto. Ins. Co. v. White,* 248 Md. 324, 236 A.2d 269 (1967). The failure of a liability insurer, in taking charge of the defense of an action against the insured, to properly investigate the evidence on the issue of the prospective amount of damages has frequently been held to evidence its bad faith in rejecting an offer to compromise for an amount within the policy limits, the court's taking the view that the insurer could not make a good faith decision as to the merits of the offer until it was in possession of the available facts. Annot., 40 A.L.R.2d 168, 208 (1955). The insurer has the duty to thoroughly investigate to determine the facts upon which good faith judgment as to settlement can be formulated, and its failure to do so properly may evidence a lack of good faith. *Radio Taxi Serv. Inc. v. Lincoln Mut. Ins. Co.,* 31 N.J. 299, 157 A.2d 319 (1960); Appleman, § 4712.

The flat refusal to negotiate, under circumstances of substantial exposure to liability, a demonstrated receptive climate for settlement, and limited insurance coverage may show lack of good faith as well. *Abernethy v. Utica Mut. Ins. Co.,* 373 F.2d 565 (4th Cir. 1967).

■ The judgment of the trial court will be sustained if it can be said to be correct on any theory. *Vacca v. Steer, Inc.,* 73 Wn.2d 892, 441 P.2d 523 (1968); *Kirkland v. Steen,* 68 Wn.2d 804, 810, 416 P.2d 80 (1966). The quote from the memorandum opinion of the trial court previously set out

and its written findings of fact amply support the trial court's finding that Grange did not make an adequate investigation so as to sufficiently inform itself of the damages and verdict potential of this case. This alone supports the trial court's conclusion of bad faith, as well as its flat refusal to negotiate.

█ Although the trial court's finding of bad faith is sustained on the other grounds which we have discussed, Grange's failure to determine whether the offer of settlement within policy limits was still available after entry of the judgment and during the appellate processes is also a factor which may be considered in determining lack of good faith. If settlement can be made during that period, for the policy limits or less, the insured's interests are the only ones put in jeopardy by the decision to prosecute the appeal. The application of the good faith test for these reasons is more exacting at the appellate stage of the proceedings than before or during the trial. *Bowers v. Camden Fire Ins. Ass'n,* 51 N.J. 62, 72, 237 A.2d 857, 862 (1968). *Bowers* held unless there is a probability of reversal, due to the fact that only the insurance company could benefit, good faith can be demonstrated only by making the proposed settlement.

The findings of the trial court refer to the state of the law at the time this case was tried on the issue of whether or not there was sufficient evidence of gross negligence to go to the jury as "unsettled." The decision by the Supreme Court in *Tyler v. Tyler,* 65 Wn.2d 102, 395 P.2d 1021, 6 A.L.R.3d 764 (1964), indicates this finding was justified and that the case would not be one where it could be said there was a "probability" of reversal. The court in *United States Fid. & Guar. Co. v. Evans,* 116 Ga. App. 93, 156 S.E.2d 809 (1967), adds another factor to consider in determining good faith at this level and indicates:

> Not only must the circumstances be such as to point strongly to a reversal but more important they must be such that there is a great possibility that upon a second trial in any event a judgment will not be returned in excess of the coverage of the policy.

Considering the accurate characterization of the law by the trial court as merely unsettled at the time the appeal was taken and the severe personal injuries previously described, Grange satisfied neither the tests set forth in *Bowers* or *United States Fid. & Guar. Co.* and for this reason, as well, the trial court's finding of bad faith was justified.

Grange, citing *Burnham v. Commercial Cas. Co.*, 10 Wn.2d 624, 117 P.2d 644 (1941), urges the Washington Supreme Court has held it is not bad faith for the insurer to refuse settlement under the bona fide belief it might defeat the action or, in any event, keep the verdict within the policy limits, or have a fighting chance to win and that a mere mistake of judgment is not bad faith.

Although there are statements in *Burnham* which could be said to support the contentions made by Grange, the determination by Grange of whether or not it would settle within policy limits must, by necessity, have depended upon its assessment of the possibility of liability of its client to the injured party and the resultant range of compensation for the injuries suffered. Grange, in oral argument, conceded this was not a case where it could be said there was a 100 per cent chance no liability would be found and therefore a realistic assessment of the potential amount of damages recoverable in the event of liability had to be a factor to be taken into consideration in any valid determination of whether or not to accept an offer to settle within the policy limits.

The trial court's oral opinion, finding a violation of the duty of the company to realistically apprise itself as to the extent of the immediate injuries is supported by the record.

Without a thorough investigation of the medical aspects of the injuries, there could be no realistic assessment of Grange's ability to keep the recovery within policy limits and *Burnham* does not apply. *Radio Taxi Serv., Inc. v. Lincoln Mut. Ins. Co., supra.*

The findings of fact and the oral opinion of the court establish there was a violation of the duty of Grange to its insured. The judgment of the trial court is affirmed.

JAMES, C. J., and WILLIAMS, J., concur.