[No. 101-41294-2. Division Two. December 2, 1970.]

LESLIE R. FITE, *Appellant,* v. BETTY J. FITE, *Respondent and Cross-appellant.*

*Neal, Bonneville, Hughes & Viert* and *William G. Viert*, for appellant.

*Lee, Krilich, Lowry & Thompson* and *Thomas C. Lowry*, for respondent and cross-appellant.

PEARSON, J.—In this action both parties are appealing from the property division made by the trial court as a part of a decree of divorce. Defendant wife also appeals from the refusal of the trial court to find that she had established grounds for divorce against plaintiff and the refusal to grant alimony.

The plaintiff, Leslie R. Fite, and the defendant, Betty J. Fite, were married on December 22, 1956 in Las Vegas, Nevada. It was a second marriage for both. No children are involved. The parties separated and this action was commenced in September, 1967. The decree, granting plaintiff a divorce and making a division of the property, was entered on April 18, 1969. At the time of the divorce, plaintiff was age 57 years and defendant was age 43 years. No alimony was granted, inasmuch as defendant was found to be in good health and employable.

The trial court found that upon defendant's admissions she had committed indiscretions with another man. This established plaintiff's grounds for divorce. The court did not believe that defendant's misconduct was justified by her testimony that she was ignored by plaintiff and that

he had refused to cohabit with her for 4 or 5 years. Consequently, her application for a divorce was denied. These findings were amply supported by substantial evidence. In any event, where both parties seek a divorce, the refusal of the court to grant a divorce to one party is not considered prejudicial error. *Skaare v. Skaare,* 52 Wn.2d 273, 324 P.2d 815 (1958). Our review will be limited to the claimed errors assigned to the division of property.

The court found that plaintiff brought to the marriage approximately $290,000 of separate property and that defendant had no property at that time. At the time of the separation the net value (before taxes) of all assets held by the parties was as follows:

| | |
|---|---|
| 1795 shares of stock in Walker Chevrolet Co. Inc. at $243 per share[1] | $436,185.00 |
| *Walker Chevrolet Profit Sharing Plan | 23,053.24 |
| *192 shares of stock in Rainier Leasing Corp. Inc. | 26,317.00 |
| *Stock trading account with Merrill, Lynch, Pierce, Fenner & Smith, Inc. | 40,984.00 |
| Notes receivable from the sale of an interest in B & I Acceptance Co., Inc.[2] | 162,345.00 |
| Other notes receivable | 8,000.00 |
| *Bank account in National Bank of Washington | 3,500.00 |
| *Residence with contents | 40,000.00 |
| | $740,384.24 |

(*Conceded to be community property.)
(Various obligations, including a note of approximately $90,000 to the National Bank of Washington, would reduce the net value of the estate to approximately $604,000.)

The trial court awarded defendant the residence and contents ($40,000) and a cash sum of $120,000—$45,000 payable upon the entry of judgment and the balance in annual installments of $15,000 with 6 per cent interest per annum

---

[1]At the time of the divorce, plaintiff owned the corporate stock in Walker Chevrolet Co., Inc.

[2]B & I Acceptance Co., Inc. was an automobile loan finance company in which plaintiff held a substantial interest in Phoenix, Arizona, prior to his marriage to defendant.

on the unpaid balance. Defendant was also awarded $10,000 for attorney's fees and $1,800 for litigation expenses. Plaintiff was awarded the balance of the assets.

Several other factors are significant in reviewing the assignments of error advanced by both parties. Plaintiff's annual earnings from Walker Chevrolet had averaged $60,000 for the 10 years prior to the divorce. These are admittedly community earnings; and while plaintiff testified that $22,000 per year was expended on community living expenses, the trial court refused to accept that testimony because it was unsupported by any records. Instead, the trial court determined that only $12,000 annually was expended on community living expenses and consequently the increased value of the total estate was due in part, at least, to the community earnings of plaintiff.[3] This determination is challenged by plaintiff on appeal.

When the parties arrived at Tacoma, a joint checking account was opened in the National Bank of Washington. All earnings of plaintiff from Walker Chevrolet, together with income, interest, dividends, etc., which he received from other separate assets, were deposited in this account. Bank loans, which were obtained to enable the purchase of stock in Walker Chevrolet were repaid from this checking account. This testimony is largely relied upon by defendant in her cross-appeal, to support her claim that the separate and community assets were so commingled as to make tracing of separate assets impossible.

The first major purchase of Walker Chevrolet stock occurred in 1959 when plaintiff acquired 25 per cent thereof at a cost of $90,000. To fund this purchase, plaintiff testified that he borrowed $30,000 from a Kansas bank, pledging his B & I stock (separate property) as collateral. The balance was funded by separate assets. The loan was repaid, he testified, from collections made on monies received from the B & I separate income.

---

[3]This finding indicated that the court placed importance on the undisputed testimony that plaintiff allowed defendant a weekly allowance of $80 for household expenses.

In 1960 plaintiff made another major purchase of the Walker Chevrolet stock for $100,000. He testified that this purchase was funded by a loan from the National Bank of Washington, again using B & I assets as collateral. In repaying this loan, plaintiff testified that he did not rely on community income from his earnings received from Walker Chevrolet, but used instead monies from assets he had prior to the time of his marriage.

In 1962 plaintiff acquired the third and final block of Walker Chevrolet stock for $110,000. Again, he testified that this purchase was funded by a loan from National Bank of Washington, pledging B & I assets as collateral. At the time the parties separated, there was $81,000 due the National Bank of Washington. It was not clear from the records whether or not the stock loan had been repaid. At the time of trial, the amount due the bank was approximately $90,000.

The trial court found that approximately one-third or 613 shares of Walker Chevrolet stock at $243 per share was community property, and this is the finding which plaintiff primarily challenges on appeal.

Defendant and cross-appellant contends that the trial court erred in not finding that all of the Walker Chevrolet stock was community property—or that plaintiff's proof fell short of tracing the separate assets as a matter of law.

We will treat these conflicting contentions together, since they both involve RCW 26.08.110 and its direction that the court shall make "such disposition of the property of the parties, either community or separate, as shall appear just and equitable . . . ". It seems to us that certain general principles apply to answer the complaints of both parties concerning the division of the property made by the trial court.

■ First, the trial court is required to have in mind the correct character and status of the property as community

or separate before any theory of division is ordered. *Blood v. Blood,* 69 Wn.2d 680, 419 P.2d 1006 (1966).[4]

The trial court, in finding of fact No. 5, labeled certain items of property as community property and then made certain allocations of value ($160,000) to the defendant as a "fair and equitable division of the property of the parties".

Found to be community property were:

| | Value |
|---|---|
| 613 shares of Walker Chevrolet Company stock at $243 per share (this represented the last stock acquisition) | $148,959.00 |
| 192 shares of Rainier Leasing Company stock | 26,317.00 |
| Home and contents | 40,000.00 |
| Walker Chevrolet Company Profit-sharing Plan | 23,053.24 |
| | $238,329.24 |

The court did not specifically find the Merrill, Lynch, Pierce, Fenner & Smith account to be community property, but the parties had both conceded that it was, at least to the extent of $41,000. The same is true as to an $8,000 note and a $3,500 bank account. Thus, of a net estate of $604,000, approximately $290,000 was found or conceded to be community property. The court allocated approximately $15,000 more than 50 per cent of the community property to the defendant and allowed $11,800 to defendant for attorney's fees and costs.

Our review of the record convinces us that the trial court was fully justified in determining that all but the last purchase of stock in Walker Chevrolet was plaintiff's separate property, and that the court did have in mind the correct character and status of the property at the time the division was made.

■ Since all of the stock was acquired during marriage, it is presumed to be community property, and the burden was upon the plaintiff to prove otherwise by clear

---

[4]*Blood v. Blood,* 69 Wn.2d at 682 makes it clear that the trial court is not bound to award all separate property to the party acquiring it or to divide the community property equally.

and satisfactory evidence. *See Hamlin v. Merlino,* 44 Wn.2d 851, 272 P.2d 125 (1954). The court was apparently satisfied with the quantum of proof to establish the separate character of the first two acquisitions of Walker Chevrolet stock. Not only did the trial court have plaintiff's testimony that separate assets were used or pledged to acquire those purchases of the stock, but also there was the uncontradicted testimony that separate assets were all that was available to account for those purchases. Accordingly, we must reject defendant's contention that the trial court erred in finding these assets to be plaintiff's separate property.

On the other hand, the court did not believe the quantum of proof to be sufficient to overcome the presumption that the last stock acquisition was community property. Plaintiff's testimony with reference to this purchase was not substantiated by any documents to show that separate assets were in fact pledged. By 1962 plaintiff's community earnings had been substantially commingled with his separate income. In 1961 his community earnings were $48,039; in 1962, $70,473; and in 1963, $107,694.77. We think the court was justified in finding that plaintiff's community earnings were not used up in taking care of living expenses and consequently the presumption that this stock acquisition was community property had not been overcome. *See Hamlin v. Merlino, supra.*

In urging that the trial court did not have the correct status of the property in mind when the division was ordered, plaintiff points to the portion of finding No. 5, where the court was making allocations of value to the defendant:

(5) The ten years of living expenses having been reduced to $1,000.00 a month means that approximately $100,000.00 in a period of ten years and the Court allocates $50,000.00 of this sum.

Plaintiff interprets this allocation to constitute a finding of a phantom community property asset which did not exist and consequently demonstrates the trial court did not have the correct status of property in mind. We do not construe the allocation in that manner, since it was not a

finding as to any asset, but was merely a method of allocating to the defendant her community share of the original cost of 613 shares of Walker Chevrolet stock. We construe it in that manner, because in allocation No. 3 the trial court had allocated to defendant only one-half of $80 per share for the 613 shares which had specifically been found to be the community interest in that business. In other words, assuming that the court intended an approximate 50-50 division of the community property,[5] defendant should have been allowed approximately $75,000 for a one-half interest in 613 shares of stock valued at $243 per share. Items (3) and (5) of the allocation in effect allow her that sum. Since the trial court can be sustained on any ground within the proof, *Vacca v. Steer, Inc.*, 73 Wn.2d 892, 441 P.2d 523 (1968), *Northwest Collectors, Inc. v. Enders*, 74 Wn.2d 585, 446 P.2d 200 (1968), no reversible error attached to this allocation of the trial court.

▪ Plaintiff also complains that the $23,000 allocated to plaintiff (item 6) as "one-fourth of the tax setoff against the wages . . . " was also a non-existent community asset and should not have been allowed. This item was explained in the court's oral decision. The court believed that, in the income tax accounting which had been made, too much of community earnings were used by plaintiff on taxes which arose because of his retained separate estate interests. While we do not believe that such an allowance is justifiable as a division of a community asset, we believe such allocation is supportable on the basis that the trial court stated in its oral decision its intention to allow defendant an amount in excess of her one-half interest in the community property because of inadequate explanations of certain business transactions, as well as improper allocations of taxes between community and separate interests. The trial court is not obliged to make an exact monetary division of community property, nor to award all separate property to the party acquiring it. *See Blood v. Blood, supra.*

---

[5] And such assumption is not supported by the findings.

Having determined that we believe the trial court had the correct status and character of the property in mind when the theory of division was ordered, and having further determined that defendant was allowed a sum in excess of 50 per cent of the community property, was such division of property "just and equitable" under RCW 26.08.110?

■ We first point out that this court will not interfere with the trial court's disposition of property in a divorce action unless there has been a *manifest* abuse of discretion. *Mayo v. Mayo*, 75 Wn.2d 36, 448 P.2d 926 (1968). Whether or not there has been an abuse of discretion depends upon whether this court can say that no reasonable man would take the view adopted by the trial court. *Rehak v. Rehak*, 1 Wn. App. 963, 465 P.2d 687 (1970).

In *Rehak v. Rehak, supra,* Division 1 of the Court of Appeals carefully considered the subject of judicial discretion in the divorce setting, together with the guidelines within which the trial court must function in making a just and equitable disposition of property as directed by RCW 26.08.110.

The factors which are to be considered by the court are contained in the above statute and have been amplified by the Supreme Court in *DeRuwe v. DeRuwe*, 72 Wn.2d 404, 433 P.2d 209 (1967):

(1) the merits of the parties;

(2) the condition in which they will be left by the divorce;

(3) the burdens imposed by child custody;

(4) the necessities of the wife and the financial ability of the husband;

(5) the age, health, education and employment history of the parties;

(6) the future earning prospect of the parties;

(7) the sources through which the property was acquired by the parties during the marriage and what properties each brought into or contributed to the community property;

(8) the kinds of property left to be divided at the divorce. Of these factors, the economic condition in which the decree will leave the parties is and should be the paramount consideration. *See DeRuwe v. DeRuwe, supra.*

Applying these factors to the instant case, and in particular to the economic results of the divorce, it would be difficult for us to conclude that an abuse of discretion had occurred. The large disparity in earning capacity of the parties would, in our opinion, justify the award of $160,000 to the defendant of total assets of $604,000. *See Peterson v. Peterson,* 3 Wn. App. 374, 475 P.2d 576 (1970).

Nor do we find an abuse of discretion on the part of the decree requiring plaintiff to pay the obligations of the parties incurred during the marriage, including all tax obligations. The defendant was required to pay those obligations incurred by her personally after the parties separated. The challenged order does not in our judgment constitute an abuse of discretion, even though one obligation of $1,500 which defendant had incurred for cosmetic plastic surgery prior to the separation had been incurred by defendant over plaintiff's strong objection.

Lastly, plaintiff claims it was an abuse of discretion for the court to have allowed defendant $10,000 for attorney's fees and $1,800 for costs with which to pay her accountant. Plaintiff relies on *Koon v. Koon,* 50 Wn.2d 577, 313 P.2d 369 (1957). In that case, it was held that the trial court had not abused its discretion in refusing to allow attorney's fees to the wife where there was no showing of need. The court stated at pages 581 and 582:

> A wife is not entitled to free litigation. If, however, a wife is without funds, it is an abuse of discretion to deny. Conversely, if the wife has money of her own, it is error to award attorney's fees.

(Footnotes omitted.)

In the instant case, defendant had, when the action was commenced, no income of her own and no assets on which to draw for payment of attorney's fees and costs. In fact, she still has none. The fact that she will receive assets

when this litigation is finally terminated is not the test of whether or not attorney's fees should be allowed. The situation must be viewed as it existed at the time the action was commenced. *See Friedlander v. Friedlander,* 58 Wn.2d 288, 362 P.2d 352 (1961). Her attorneys at the inception were required to undertake the serious responsibility of attempting to unravel and establish the community interest in over 10 years of transactions, both inside and outside plaintiff's business pursuit. Their client, the defendant, had little knowledge of the intricacies of plaintiff's business affairs. Every step of the lawsuit was vigorously contested on both sides and trips to the motion calendar were frequent. We, like the Supreme Court in *Friedlander v. Friedlander, supra,* do not find an abuse of discretion in the award of attorney's fees and costs.

We do think, however, that no additional attorney's fees nor costs should be allowed on appeal, as defendant requests. We deem the allowance already made adequate under the circumstances. Both parties have appealed the decision and both appeals have been determined to be without merit. Consequently, both parties should pay their own costs on appeal and attorney's fees.

 Defendant raises two additional points which have not heretofore been covered. The first had to do with the trial court's refusal to allow alimony. The court specifically found that defendant was in good health and employable. The finding is supported by the evidence. Alimony is not awarded in Washington, absent a showing of need. *See Fowler v. Fowler,* 71 Wn.2d 540, 429 P.2d 881 (1967).

Defendant also claims that the trial court should have determined the value of certain property as of the time of trial, rather than as of the time the parties separated. This claim of error is deemed to have been waived by the failure to assign as error the trial court's findings as to value. *See* CAROA 43.

Next, defendant asks us to increase the amount of support the trial court allowed pending appeal. This we refuse to do. The support allowed pending appeal was the same

which had been allowed from the time the action was commenced, at which time, after a full and complete hearing, the amount was fixed. Another hearing was held pending appeal to determine if the amount should be increased. We refuse to rehear that matter or to hold that the trial court's determination amounted to an abuse of discretion.

To avoid further difficulties with the status of the monies awarded to defendant, we hold that the $45,000 which was payable at the entry of judgment shall be payable immediately upon the remittitur herein, together with interest at 8 per cent per annum from April 18, 1969 to the date of payment.

While this appeal was pending, a $15,000 installment fell due on April 18, 1970. The final decree provided for interest on the unpaid balance at 6 per cent per annum. Such $15,000 installment is payable immediately upon the remittitur, together with interest on $75,000 at 6 per cent per annum from April 18, 1969 to April 18, 1970, and 8 per cent interest on the delinquent payment (which we compute to be $19,500) from April 18, 1970 to the date of payment.

The judgment is affirmed in all respects.

ARMSTRONG, C. J., and PETRIE, J., concur.

Petition for rehearing denied February 2, 1971.

Review denied by Supreme Court March 2, 1971.