424 So.2d 780 (1982)
SENTRY INSURANCE, a Mutual Company, Appellant,
v.
Clyde R. BROWN, Appellee.
Clyde R. BROWN, Appellant,
v.
SENTRY INSURANCE, a Mutual Company, Appellee.
Nos. AC-366, AD-291.
District Court of Appeal of Florida, First District.
April 15, 1982.
On Rehearing October 19, 1982.
Rehearing Denied December 3, 1982.
*781 Thomas J. Guilday of Akerman, Senterfitt & Eidson, Tallahassee, for appellant and appellee Sentry Ins., a mutual company.
M. Stephen Turner and Jackson G. Beatty of Culpepper, Beatty & Turner, Tallahassee, for appellee and appellant Clyde R. Brown.
SHAW, Judge.
Clyde Brown is seventy-four years of age and has carried automobile liability insurance with Sentry and its predecessor companies for forty-nine years. On May 9, 1978, he received a traffic citation for driving fifty-four miles per hour in a twenty miles per hour zone and paid a small fine without protest. On or about October 12, 1979, he received a letter from Sentry notifying him that his policy would terminate on December 1, 1979, and would not be renewed because of the traffic violation conviction. A suit, filed by Brown for declaratory *782 judgment against Sentry, was settled by Sentry's agreement to reinstate Brown's policy in light of his long tenure with the company and Brown's agreement to dismiss the suit and his claim for attorney's fees. On February 19, 1980, Brown was involved in an intersection accident in Dothan, Alabama. Although no official traffic citations were issued, it was noted on the accident report that Brown failed to yield the right of way. On or about October 10, 1980, Sentry advised Brown, by letter, that his policy would not be renewed, citing the 1978 speeding ticket and the 1980 accident. In the latter part of October, 1980, Brown filed suit for declaratory judgment alleging that Sentry had acted arbitrarily and capriciously in refusing to renew his insurance. The trial judge found that Sentry had discriminated because of age and that the company's second notice of nonrenewal was arbitrary, capricious, and in violation of applicable provisions of the Florida Insurance Code. Sentry was permanently enjoined from canceling or refusing to renew the policy for the reasons stated in its notice of nonrenewal. On May 15, 1981, an order was entered taxing costs in the amount of $1,154.14 and denying attorney's fees.
The judgment of the trial court is predicated upon Section 627.728(4)(c), Florida Statutes (1979), which reads as follows:
(c) No insurer shall fail to renew a policy for reasons based entirely on the sex, occupation, marital status, race, color, creed, national origin, residence, military service, or age of the insured, or on the principal place of garaging the insured vehicle in this state, or for any other reason which is arbitrary or capricious.
In support of his complaint Brown introduced evidence of his nearly perfect driving record with the company for forty-nine years, the attempted nonrenewal of his policy after he reached the age of seventy, and Sentry's recent sharp reduction in its percentage of elderly policyholders in Florida. Dr. Ray Solomon, Dean of the College of Business and Professor of Insurance, Florida State University, testified that there was no reasonable underwriting reason not to renew the policy in this instance.
In rebuttal, Sentry introduced evidence that it is a preferred risk company and, under company policy, speeds in excess of thirty miles per hour over the posted speed limit are a major violation precluding renewal of a policy, regardless of the policyholder's age. John Steven Meyer, Sentry's underwriting manager, testified that in determining whether to underwrite renewals of preferred policyholders, the company considers accidents, traffic violations, frequency of loss, type of car, and past driving history. He testified that length of time with the company is a consideration, but it is secondary to the driving record during the five year period immediately preceding the underwriting analysis. Sentry recognizes a nexus between excessive speed and loss potential by placing speeds in excess of thirty miles per hour over the posted speed in the same category as DWI, reckless driving, and eluding a police officer.
The trial judge found that Sentry's second notice of nonrenewal was arbitrary and capricious and patently discriminatory against appellant Brown because of his age. We disagree and REVERSE. Failure to yield right-of-way, resulting in an accident, and excessive speeds occurring within the most recent five year period are legitimate factors to be reviewed by a company in evaluating a policyholder's risk potential. The evidence shows that Sentry elected not to renew Brown's policy because of objective criteria applied uniformly by the company, irrespective of age. The trial court's finding to the contrary is not supported by the record. We accordingly REVERSE the final judgment in AC-366, thereby mooting the issues raised in AD-291.
McCORD and ERVIN, JJ., concur.

ON MOTION FOR REHEARING
ERVIN, Judge.
After further considering appellee's motion for rehearing, we now grant the motion and withdraw our opinion filed April 15, 1982, which reversed the lower court's *783 final judgment in Case No. AC-366, holding that Sentry's second notice of nonrenewal of Brown's automobile liability insurance policy was arbitrary and capricious and in violation of applicable provisions of the Florida Insurance Code. In our view there was both an evidentiary and a legal foundation for the decision reached, and it is accordingly affirmed. In Case No. AD-291, however, we reverse the court's order denying appellee's motion for attorney's fees and remand the cause to the court for the determination of an appropriate amount to be assessed against the carrier.
We consider that there was competent and substantial evidence in Case No. AD-366 to sustain the lower court's finding that Sentry's notice of nonrenewal was arbitrary and capricious and in violation of applicable provisions of the Florida Insurance Code. It is our view that those provisions establish a statutory mandate that an insurer's right to cancel or nonrenew a policy cannot be exercised by mere whim or caprice; that such right must be carried out in strict compliance with the statutory directions. It has been long recognized that the law of this state is a basic ingredient of every insurance contract. Board of Public Instruction v. Bay Harbor Islands, 81 So.2d 637 (Fla. 1955); General Development Corp. v. Catlin, 139 So.2d 901, 903 (Fla. 3d DCA 1962); National Merchandise Co., Inc. v. United Service Automobile Association, 400 So.2d 526, 531 (Fla. 1st DCA 1981). In our view the legislature has clearly established its intent that an insurer shall not arbitrarily[1] or capriciously refuse to renew an insured's liability insurance policy,[2] through its enactment of Section 627.728(4)(c), Florida Statutes (1979), providing:
No insurer shall fail to renew a policy for reasons based entirely on the sex, occupation, marital status, race, color, creed, national origin, residence, military service, or age of the insured or on the principal place of garaging the insured vehicle in this state, or for any other reason which is arbitrary or capricious.

(e.s.) This statute was first passed by the legislature during a special session conducted in January and February of 1971, see Chapter 71-7(B), Section 1, Laws of Florida, pursuant to a proclamation by Governor Askew, called for the "purpose of considering the adoption of legislation to assure that adequate automobile insurance protection be available to the citizens of Florida at reasonable prices." 1 Laws of Florida 3 (1971). The statute, "restrict[ing] insurance companies in cancelling or failing to renew existing policies, would call for a broad or liberal interpretation" favoring the insured. *784 Hartford Accident & Indemnity Co. v. Sheffield, 375 So.2d 598, 600 n. 2 (Fla. 3d DCA 1979).
Given the above legislative history, we conclude that if a court were presented with evidence disclosing that an insurer had failed to comply with the pertinent statutes regulating its right to renew, the court could properly deem such action "arbitrary or capricious." In 1977, the legislature enacted Section 626.9702, Florida Statutes (ch. 77-158, § 1, Laws of Florida), providing:
(1) No insurer shall impose or request an additional premium for automobile insurance, or refuse to renew a policy, solely because the insured or applicant was convicted of one or more traffic violations which do not involve an accident or do not cause revocation or suspension of the driving privileges of the insured, without adequate proof of a direct, demonstrable, objective relationship between the violation for which the surcharge was imposed and the increased risk of highway accidents.
(2) No insurer shall cancel or otherwise terminate any automobile insurance contract with an insured after the insured has paid the premiums on such policy for 5 years or more solely because the insured is involved in a single traffic accident.
(3) Any person or organization which violates any provision of this section shall be subject to the penalties provided in s. 627.381.
Applying Section 626.9702 to the situation before us, in which the insurer's decision to nonrenew was based upon its insured's involvement in one traffic violation and one accident, not resulting, however, in the insured's driving privileges being either revoked or suspended, we construe the statute as authorizing the insurer to nonrenew a policy under two alternative conditions:
(1) If the insured was convicted of a traffic violation, not involving an accident, and there is adequate proof of a direct, demonstrable relationship between the violation and the increased risk of highway accidents.
(2) If the insured was convicted of a traffic violation, not involving an accident, and proof is lacking that there is any direct, demonstrable relationship between the violation and the increased risk of highway accidents, and if the insured, a policyholder for five or more years, has been involved in a single accident for which he is at fault.
We consider the court had before it competent and substantial evidence for it to find that the first prong of Section 626.9702 was not met for two reasons. First, the record discloses Sentry's earlier, inconsistent decision to reinstate Brown's insurance, notwithstanding his traffic citation for driving at speeds in an area in excess of 30 miles more than the speed posted. The lower court may, under the circumstances, have determined that Sentry had waived its right to rely upon the traffic violation as a reason for nonrenewing Brown's liability insurance. Waiver is either an intentional or voluntary relinquishment of a known right, or conduct giving rise to an inference of the relinquishment of a known right. Fireman's Fund Insurance Co. v. Vogel, 195 So.2d 20 (Fla. 2d DCA 1967). Moreover, if a party waives a right provided under a contract, it cannot, without the consent of its adversary, reclaim it. Thomas N. Carlton Estate, Inc. v. Keller, 52 So.2d 131 (Fla. 1951). Finally, the question of waiver is usually one for the trier of the facts. Rutig v. Lake Jem Land Co., 155 Fla. 420, 20 So.2d 497 (1945); Davis v. Davis, 123 So.2d 377 (Fla. 1st DCA 1960). If the court considered the first statutory prong to have been waived, Sentry would have been precluded by Section 626.9702(2) from asserting Brown's involvement in the accident as the sole basis for its refusal to renew.
Alternatively, the court, in considering the circumstances relating to the traffic citation, may have determined there was inadequate proof, as required by Section 626.9702(1), of a "direct, demonstrable, objective relationship between the violation ... and the increased risk of highway accidents." If the court's judgment implicitly so held, in our estimation it was supported by competent and substantial evidence. *785 The only witness who offered testimony before the court as to the particulars of the violation was Brown, who stated that with the exception of the posted reduced speed during school hours, the permissible speed in the area was normally forty-five miles per hour; that the violation occurred on a four-lane highway, and at that time, school was apparently still in session because Brown saw no children in the vicinity.
If the court concluded that there was insubstantial proof of a relationship between the violation and the increased risk of an accident, it would have been necessary in our judgment for the insurer, pursuant to the provisions of Section 626.9702, to base its nonrenewal upon both the violation and the later accident. We consider, however, that an insured's mere involvement in an accident does not provide justification under the provisions of Section 626.9702 for the insurer not to renew  there must also be evidence revealing that the company's policyholder was to some extent at fault in causing the accident. This conclusion is made evident by reading the provisions of Section 626.9541(15)(c), Florida Statutes (1979), in pari materia with Section 626.9702(2).
The former section was first enacted in 1976 as Section 626.954(15)(c) by Chapter 76-260, Section 9, Laws of Florida, effective June 28, 1976 (codified as Section 626.9541(15)(c), Florida Statutes (Supp. 1976), and was applicable to the policy period of December 1, 1979-November 30, 1980. It provides in pertinent part that an insurer deals illegally in premiums if it refuses to renew a policy solely because the insured was involved in an automobile accident, causing a loss to the insured's insurer under the policy, unless, among other things, "the insurer's file shall contain sufficient proof of fault... ." Reading further into Section 626.9541(15)(c), we are of the view that the statute clearly implies that a traffic citation should normally issue following an accident as a predicate to any assessment of fault in determining whether to renew a policy. Sub-paragraphs 5, 6 and 7 to subsection (15)(c) respectively require an insurer to reimburse an insured for any surcharge imposed if the insured demonstrates that he was not convicted of a moving traffic violation, adjudicated not to be liable by a court of competent jurisdiction, or in receipt of a traffic citation which was dismissed or nolle prossed.
Brown had never received any traffic citation as a result of the accident, and the sole source of the insurer's information that Brown had failed to yield the right-of-way was the isolated statement in the traffic accident report to that effect. Only Brown testified as to the circumstances of the accident, and his testimony could hardly be viewed as tantamount to an admission that he was at fault. He stated that as he pulled up to a stop sign, he looked right, looked left, and seeing no one, proceeded across the street in a southerly direction, and, while in the middle of the intersection, was struck by the operator of another vehicle traveling in an easterly direction. He related that the second automobile was traveling approximately 50 miles per hour at the time, and that there were no skid marks or any other indications revealing that the vehicle's occupant had applied the brakes before striking his car.
Given this testimony, and the fact that Section 316.066(4), Florida Statutes, precludes the use of accident reports "as evidence in any trial, civil or criminal, arising out of an accident ...", the court may well have considered the evidence was insufficient on the question of whether Brown was at fault.
In its determination that Sentry's action was motivated by arbitrary or capricious considerations, the court could also properly consider the testimony of Dr. Ray Solomon, dean of the college of business at Florida State University, and a professor of insurance, who testified that he was familiar with generally used underwriting standards in the insurance industry. It was his opinion that a company's decision to nonrenew an insured's policy because of an accident and a speeding violation occurring within a two-year period, in disregard of an otherwise perfect driving record for 49 years, was a "purely random" selection, and *786 that two such instances would not establish a pattern for poor driving. Solomon's qualifications as an expert were not impeached. His opinion testimony was appropriately before the court. It, together with the evidence relating to the circumstances of the traffic violation and the accident, supplied a suitable foundation for the conclusion reached.
Accordingly, we grant the motion for rehearing in Case No. AC-366 and affirm the judgment of the trial court in its entirety.
As to Brown's appeal in Case No. AD-291 from the order denying his motion for attorney's fees on the ground that the provisions of Section 627.428, Florida Statutes, do not apply to a declaration of one's rights of an insurance policy when a decision by the insurer is made to not renew the policy, but pertain only to the enforcement of an existing insurance contract, we reverse. The suit for declaratory judgment was brought before the expiration of the contract for the purpose of determining Brown's rights of renewal under the existing policy. Brown prevailed in that suit. We consider the issue in this cause to be analogous to that in Stonewall Insurance Co. v. W.W. Gay Mechanical Contractor, 351 So.2d 403 (Fla. 1st DCA 1977), in which we held that an insured was entitled to a declaratory judgment on his right to coverage even though the insured's liability to a third party had not yet been established, and, having prevailed on the declaratory judgment suit, the insured was entitled also to attorney's fees under the statute.
The denial of attorney's fees in Case No. AD-291 is reversed and the cause is remanded to the trial court with directions that it award a reasonable fee in favor of Brown to be assessed against Sentry.
McCORD, J., concurs.
SHAW, J., dissents.
SHAW, Judge, dissenting.
I would deny the motion for rehearing for the reasons set forth in this Court's original opinion.
NOTES
[1] Arbitrary is variously defined as "based on random or conventional selection of choice rather than reason; ... given to willful intentional choices and demands." Webster's Third International Dictionary (1981).
[2] One commentator has offered the following reasons stimulating such legislation:

Criticism has been leveled at the insurance industry regarding alleged arbitrary cancellation and nonrenewal practices particularly with drivers either elderly or under age twenty-five years. Criticism arises from practices of a comparatively few insurers, such as alleged unfair cancellation, nonrenewal, refusal to insure or they offer insurance only at increased rates.
Studies of the problem conducted so far by state insurance departments indicate that the vast majority of automobile insurers exercise restraint in their cancellation practices and do not cancel insurance without justifiable cause.
* * * * * *
The major trade associations have taken forthright action to correct the problem created by unfair and arbitrary action of companies representing a relatively small share of the total automobile insurance business.
The American Mutual Insurance Alliance has commented that
"These surveys and others which have been conducted in recent years support our belief that the public interest requires state action that will hold all auto insurers to the level of performance already being met by companies serving the majority of policyholders."
Cancellation is significant, since it appears that after cancellation industry practice makes it extremely difficult to obtain insurance with other insurers. Some will decline to consider an application for a period of three years after cancellation or will only issue a policy at substantially higher rates.
2 Long, The Law of Liability Insurance, § 15.13 at 15-28 to 15-29 (rev. ed. 1981) (footnotes omitted).