[No. 19084-9-I.  Division One.  January 8, 1988.]

JACK C. ARMSTRONG, ET AL, *Appellants,* v. SAFECO INSURANCE COMPANY, *Respondent.*

*Paul J. Burns, Mathew D. Griffin,* and *James J. Rosenberger,* for appellants.

*James P. Hunter* and *Anderson, Hunter, Dewell, Baker & Collins, P.S.,* for respondent.

RINGOLD, J.—This case presents an issue of first impression concerning an insurer's refusal to renew an auto policy. RCW 48.18.292(1) requires an insurer which does not renew to give 20 days' notice to the insured and to include the actual reason for refusal to renew.

Jack C. Armstrong, the insured under an auto policy, contends that the statutory requirement of "the actual reason" for nonrenewal requires a reason based upon good cause. Safeco Insurance Company argues that the question

is entirely legal and the "actual reason is all the statute requires." We summarize the facts which support Armstrong's claim for damages.

The Armstrongs' automobile insurance policy ran for periods of 6 months from July 12, 1977 to November 14, 1984. The last 6-month renewal was in May 1984. The last claim on the policy was made by the Armstrongs in April 1984.

In October 1984, the Armstrongs were advised by Safeco that their policy would not be renewed, effective November 14, 1984. The reason given for nonrenewal was "claims frequency and the unrevealed speeding cite for 65 in a 55 on 10/3/82."

In response to the notice of nonrenewal, the Armstrongs wrote a letter to the Washington State Insurance Commissioner, outlining the history of their insurance coverage with Safeco. The Armstrongs stated that this was the only speeding ticket Mr. Armstrong had in 30 years of driving, and that Safeco did not ask them if they had any tickets; instead, Safeco made no inquiries and just sent the renewal policy each year and requested that the premium be paid.

The Armstrongs' letter also explained the claims that the Armstrongs had made for coverage under their policies with Safeco since 1977. They stated they felt the real reason for nonrenewal was that they had filed a claim against the underinsured motorist portion of the Safeco policy, which had not yet been settled.

On March 20, 1985, in response to the Armstrong's letter, Mr. Robb Bruns, Safeco personal lines underwriting manager, wrote a letter to the Insurance Commissioner itemizing the claims made under the Armstrong insurance policies over the 7-year period of their coverage with Safeco. The claims were itemized as follows:

1. June 1, 1980—Comprehensive—rock thrown up by passing vehicle, broke windshield.

2. January 1, 1982—Collision—car stolen and damaged in an accident.

3. December 4, 1982—Collision and PIP—claimant ran stop sign and struck insured's car.

4. January 28, 1984—Comprehensive—tires slashed.

5. February 25, 1985—Comprehensive—tires slashed.

6. April 18, 1984—Collision—insured struck by claimant.

None of these claims were made subsequent to May 1984, the date of the last renewal for a period of 6 months. Nor did any of the claims arise out of culpable driving activities on the part of the Armstrongs.[1]

The Armstrongs brought this action, alleging bad faith on the part of Safeco in refusing to renew the automobile liability insurance policy. On August 21, 1986, the trial court granted Safeco's motion for summary judgment of dismissal. This appeal timely follows:

### PROCEDURAL CHALLENGE

First, Safeco argues that the exhibits and affidavit of Paul J. Burns, Armstrongs' attorney, are not based on the affiant's personal knowledge and therefore cannot be considered by the court to establish the foregoing factual summary.

CR 56(e) requires that affidavits submitted in summary judgment proceedings be made on personal knowledge, set forth admissible evidentiary facts, and affirmatively show the affiant is competent to testify as to his averments. *Meadows v. Grant's Auto Brokers, Inc.,* 71 Wn.2d 874, 878, 431 P.2d 216 (1967). Although CR 56(e) makes no distinctions between affidavits of the moving and nonmoving parties, the drastic potentials of a summary judgment motion compel the courts to indulge in leniency with respect to affidavits presented by the nonmoving party. *Meadows,* at 879.

■ Safeco contends that the affidavit produced by the Armstrongs in opposition to summary judgment is not

---

[1]The Armstrongs are now unable to obtain insurance with any other company, except for high–risk insurance, where their premiums are more than double with less coverage.

competent evidence to withstand such a motion. Safeco argues that the attorney's affidavit does not comply with CR 56(e) because, among other things, it is not based upon personal knowledge. The record, however, does not reveal any motion to strike the affidavit or any portion thereof prior to the trial court's action. Failure to make such a motion waives any deficiency which may exist. *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 352, 588 P.2d 1346 (1979) (citing *Meadows v. Grant's Auto Brokers, Inc., supra*). We, therefore, consider the Burns affidavit as part of the record.

### MEANING OF "ACTUAL REASON"

The Armstrongs argue that the duty of good faith and the language of RCW 48.18.292(1)(a) and (5) support the conclusion that before an insurer may refuse to renew, there must be a valid basis for nonrenewal, based on culpable driving activity by the insured, which increases the insurer's risk exposure.

RCW 48.18.292(1)(a) provides:

> (1) Each insurer shall be required to renew any contract of insurance subject to RCW 48.18.291 unless one of the following situations exists:
> (a) The insurer gives the named insured at least twenty days' notice in writing as provided for in RCW 48.18.291(1), that it proposes to refuse to renew the insurance contract upon its expiration date; and sets forth therein the actual reason for refusing to renew; or
> . . .

RCW 48.18.292 does not define an "actual reason" or what basis there must be for an insurer's refusal to renew an auto policy. RCW 48.18.292(5), however, provides some guidance:

> No insurer shall refuse to renew the liability and/or collision coverage of an automobile insurance policy on the basis that an insured covered by the policy of the insurer has submitted one or more claims under the comprehensive, road service, or towing coverage of the

policy. Nothing in this subsection shall prohibit the non-renewal of comprehensive, road service, or towing coverage on the basis of one or more claims submitted by an insured.

Safeco argues there is no requirement that the "actual reason" required by the statute be a reason based upon good and sufficient cause; that there is no vested right to continued liability insurance coverage, and that no law requires an insurance company to automatically extend a 6–month period of insurance coverage.

█ Insurance, as a business affected by the public interest, is subject to extensive regulations. The statute governing nonrenewal must be interpreted by an ascertainable standard. As demonstrated by the parties' arguments here, "actual reason" is ambiguous, and we must determine its meaning. *State ex rel. McDonald v. Whatcom Cy. Dist. Court,* 92 Wn.2d 35, 593 P.2d 546 (1979). In construing statutes, the primary objectives are to effectuate legislative intent, ascertained from the statutory context as a whole, and to avoid unjust or absurd consequences. *Hanks v. Nelson,* 34 Wn. App. 852, 664 P.2d 15 (1983); *In re Hoffer,* 34 Wn. App. 82, 659 P.2d 1124 (1983).

Inherent in RCW 48.18.292 is a presumption that automobile insurance will be renewed, subject to certain exceptions, including the statement of "actual reasons" at issue. The purpose for statutes requiring such notice is to prevent nonrenewal or cancellation for statutorily prohibited reasons, *see* RCW 48.30.300; to provide the insured the opportunity to convince the insurer not to carry through on its proposed action (here, nonrenewal) and to allow the insured ample time to obtain replacement coverage. *Shqeir v. Equifax, Inc.,* 636 S.W.2d 944, 948–49 (Mo. 1982) (interpreting Mo. Rev. Stat. § 379.118 (1987), which requires insurer to give notice of actual reasons for its proposed action). Though truthfulness of the reasons may be a concomitant of "actual reasons", it is not sufficient to meet an objective standard by which to measure the right of nonrenewal.

Nor may the insurer meet its statutory obligation by making an incomplete statement of its reasons for nonrenewal. In *Government Employees Ins. Co. v. Insurance Comm'r,* 40 Md. App. 201, 389 A.2d 422 (1978), the Court of Appeals considered an insurance company's nonrenewal of automobile policy based on the insured's son's driving record. The Maryland statute required an insurer to give the insured notice of its intent not to renew including "[t]he insurer's actual reason or reasons for proposing to take such action." Md. Ann. Code art. 48A, § 240AA(b)(iii) (1957).[2] The insured was informed the reason for nonrenewal was "Alan J. Frank's [son's] driving record" and included four speeding violations; the notice did not inform the insured that the rationale was that the son had received those speeding tickets within a 2–year period and that three of the tickets were received after the son had attended a driver (rehabilitation) clinic. Because the stated reason was not the entire reason, the court held it fell short of the "actual reason or reasons" and thus did not comply with the statute. Where the entirety of the reasons is not given, the insured is unable to contest in any meaningful way the nonrenewal of his policy.

Had the Legislature simply required that a "reason" be set forth we would not hesitate construing that to mean "a

---

[2]Md. Ann. Code art. 48A, § 240AA (1957) provides in part:

"(b) . . . An insurer intending to take an action . . . shall, on or before forty–five days prior to the proposed effective date of the action, send written notice of its intended action to the insured . . . The notice . . . shall state in clear and specific terms, . . .:

". . .

"(iii) The insurer's actual reason or reasons for proposing to take such action. The statement of reasons shall be sufficiently clear and specific so that a person of average intelligence can identify the basis for the insurer's decision, without making further inquiry. Generalized terms such as 'personal habits,' 'living conditions,' 'poor morale,' or 'violation or accident record' shall not suffice to meet the requirements of this section;

". . .

"(f) . . . the insurer has the burden of proving its proposed action to be justified, and, in doing so, may rely only upon the reasons set forth in its notice to the insured."

reasonable basis for nonrenewal." Adding the word "actual" must be a further limitation upon the right of the insurer to deny renewal. For example, in *Messing v. Nationwide Mut. Ins. Co.*, 42 A.D.2d 1030, 348 N.Y.S.2d 439 (1973), the court held that when the statute requires an insurer to give "specific reasons" for cancellation, the reason "[a]s requested by the . . . underwriter" is not sufficient as a matter of law. RCW 48.18.292(5) precludes an insurer from denying a renewal if the reasons are based on "one or more claims under the comprehensive, road service, or towing coverage". Thus, the Legislature has excluded some nonculpable reasons as a basis of nonrenewal. Of the six reasons given by Safeco to the Insurance Commissioner, three concerned claims under Armstrong's comprehensive coverage and statutorily are not grounds on which Safeco could decide not to renew.

In addition, there are considerations other than discrimination which require limitations on an insurer's underwriting decisions. The statutory protection afforded the insured by requiring a statement of actual reasons[3] must extend to more than prohibitions against only discriminatory nonrenewals. For example, the Maryland insurance code, which prescribes procedural limitations on nonrenewal, Md. Ann. Code art. 48A, § 240AA(b)(iii) (1957), also contains substantive limitations. Md. Ann. Code art. 48A, § 234A(a) provides in part: "[n]o insurer, agent or broker may cancel or refuse to underwrite or renew a particular insurance risk or class of risk except by the application of standards which are reasonably related to the insurer's economic and business purposes." When the statute was amended to add this substantive limitation, the legislature stated that the insurer's

underwriting decisions . . . [must] be made solely on the basis of a reasonable application to relevant facts of

---

[3]RCW 48.18.292 was amended in 1973 and strengthened the protection afforded to the insured by requiring notification of actual reasons in all cases rather than merely upon request of the insured.

underwriting principles, standards and rules that can be demonstrated objectively to measure the probability of a direct and substantial adverse effect upon losses or expenses of the insurer *in light of the approved rating plan or plans of the insurer then in effect* . . .

1974 Md. Laws ch. 752, *quoted in Lumbermen's Mut. Cas. Co. v. Insurance Comm'r,* 302 Md. 248, 487 A.2d 271, 274 (1985). A similar requirement can be inferred in this state because of the burden of good faith imposed on insurers.

RCW 48.01.030 requires the insurer and insured to act in good faith in all insurance matters:

The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, and their representatives rests the duty of preserving inviolate the integrity of insurance.

The Supreme Court recently summarized the insurer's duty to deal in good faith in *Tank v. State Farm Fire & Cas. Co.,* 105 Wn.2d 381, 385–86, 715 P.2d 1133 (1986) as follows:

The duty to act in good faith or liability for acting in bad faith generally refers to the same obligation. *Tyler v. Grange Ins. Ass'n,* 3 Wn. App. 167, 173, 473 P.2d 193 (1970). Indeed, we have used those terms interchangeably. *See Murray v. Mossman,* 56 Wn.2d 909, 355 P.2d 985 (1960). However, regardless of whether a good faith duty in the realm of insurance is cast in the affirmative or the negative, the source of the duty is the same. That source is the fiduciary relationship existing between the insurer and insured. Such a relationship exists not only as a result of the contract between insurer and insured, but because of the high stakes involved for both parties to an insurance contract and the elevated level of trust underlying insureds' dependence on their insurers. This fiduciary relationship, as the basis of an insurer's duty of good faith, implies more than the "honesty and lawfulness of purpose" which comprises a standard definition of good faith. It implies "a broad obligation of fair dealing", *Tyler,* at 173, and a responsibility to give "equal consideration" to the insured's interests. *Tyler,* at 177. Thus, an insurance company's duty of good faith rises to an even

higher level than that of honesty and lawfulness of purpose toward its policyholders: an insurer must deal fairly with an insured, giving equal consideration *in all matters* to the insured's interests.

Thus, the insurer's duty of good faith is imposed by the courts as well as the Legislature. In the context of renewal of an automobile insurance policy, this duty on an insurance company requires it to have a valid, good faith reason to justify nonrenewal. RCW 48.18.292; RCW 48.01.030.

The statutory constraints imposed by the Legislature do not require only culpable conduct by the insured to deny renewal. Where there are justifications for nonrenewal based upon insurance practices, actuarial bases or other factors, an insurer may elect not to renew a policy.

We believe that the test imposed by the Maryland legislature expresses the legislative intent which we infer from the statutes applicable here. Thus the "actual reasons" required must be based on "a reasonable application to relevant facts of underwriting principles, standards and rules that can be demonstrated objectively to measure the probability of a direct and substantial adverse effect upon losses or expenses of the insurer in light of the approved rating plan or plans of the insurer then in effect . . ." 1974 Md. Laws ch. 752.

The summary judgment of dismissal is therefore reversed and the cause is remanded to the trial court for further proceedings consistent herewith.

WILLIAMS, J., concurs.

SCHOLFIELD, C.J. (concurring in the result)—While I concur that the judgment should be reversed, I write separately because I disagree with the reasoning employed in the majority opinion to reach that result.

The opinion errs initially by concluding that the statutory requirement of stating the "actual reason" for refusing to renew is ambiguous. The ambiguity, the majority asserts, lies in interpreting "actual reason". There is nothing

ambiguous about the words "actual reason", nor is any ambiguity created by the context in which the words are used. The word "actual" means "[e]xisting in act or reality; real;—opposed to potential, virtual, theoretical, hypothetical, etc." (Italics omitted.) *Webster's New Collegiate Dictionary* 10 (2d ed. 1956). The meanings of both "actual" and "reason" require no definition by the Legislature or referral to a dictionary. The meanings are commonly understood. The words of a statute, in the absence of some ambiguity or a special statutory definition, must be given their usual and ordinary meaning and cannot be rewritten by a court. *Tauscher v. Puget Sound Power & Light Co.*, 96 Wn.2d 274, 286, 635 P.2d 426 (1981); *Pope & Talbot, Inc. v. Department of Rev.*, 90 Wn.2d 191, 194, 580 P.2d 262 (1978); *In re Estate of Baker*, 49 Wn.2d 609, 610, 304 P.2d 1051 (1956).

It is worth noting that the Armstrongs' brief makes no suggestion that the legislative language is ambiguous. The Armstrongs forthrightly state the issue at page 12 of their brief:

The real issue presented in this lawsuit is whether Safeco acted in bad faith in refusing renewal of plaintiffs' policy in October 1984. It is clear that an insurance company must have a valid, good faith reason to justify nonrenewal of an auto insurance policy. RCW 48.18.292; RCW 48.01.030.

Despite the absence of any basis for finding an ambiguity in the legislative language, the majority opinion proceeds to add to the statutory basis for nonrenewal of an automobile liability policy the requirement that the insurer's underwriting decisions must

be made solely on the basis of a reasonable application to relevant facts of underwriting principles, standards and rules that can be demonstrated objectively to measure the probability of a direct and substantial adverse effect upon losses or expenses of the insurer *in light of the approved rating plan or plans of the insurer then in effect . . .*

As the majority opinion acknowledges, the above quoted language comes from the insurance code of the state of Maryland as quoted in *Lumbermen's Mut. Cas. Co. v. Insurance Comm'r,* 302 Md. 248, 487 A.2d 271, 274 (1985). The opinion then states that "[a] similar requirement can be inferred in this state because of the burden of good faith imposed on insurers." Majority opinion, at 262.

This is clearly judicial legislation. It is well settled that courts cannot read into a statute matters which are not there nor modify a statute by construction. This is the rule even if the court's view is that the Legislature left something out unintentionally. *Rhoad v. McLean Trucking Co.,* 102 Wn.2d 422, 426–27, 686 P.2d 483 (1984). A court cannot, under the guise of construction, substitute its judgment for that of the Legislature. *Courtright v. Sahlberg Equip., Inc.,* 88 Wn.2d 541, 563 P.2d 1257 (1977).

The opinion in this case would do an end run around these well settled principles of constitutional law on the theory that the duty of good faith, which an insurance company owes to its customers, requires it. Although the duty to exercise good faith requires fair, honest, and objective dealings by both parties to an insurance policy, *Safeco Ins. Co. of Am. v. JMG Restaurants, Inc.,* 37 Wn. App. 1, 10, 680 P.2d 409 (1984), the duty is limited in application to those functions and responsibilities which have been imposed by law upon the insurance industry. It cannot be used as a bridge to impose specific duties and restrictions upon the insurance industry which go far beyond the clear wording of the legislation involved.

The Maryland statute referred to in *Lumbermen's* was accompanied by a procedure whereby the question of whether or not the insurance company had complied with the standards for nonrenewal set forth in the statute could be reviewed in a quasi–judicial proceeding before the Maryland insurance commissioner and from there appealed to the judicial system. The wisdom of leaving legislative matters to the Legislature is demonstrated by the majority

in this case, which would impose certain performance standards upon the insurance industry without providing any procedure for resolving whether a particular company was complying with those standards.

If the reasoning of the majority in this case were followed to its logical extreme, there would be no limitation upon the power of courts, under the guise of discovering legislative intent, to add to legislation substantive provisions believed by judges to be preferable to those enacted by the Legislature.

It is obvious that under the circumstances of this case, the Legislature intended only two limitations upon the right of an insurer to decline to renew. Those are giving 20 days' notice in writing and setting forth the actual reason for refusing to renew. Setting forth the actual reasons can serve several legitimate purposes. The Legislature restricted the right of nonrenewal by RCW 48.18.292(5). This demonstrates a legislative intent to limit the right only to that extent. The fact that a court feels that the statement of the actual reasons does not go far enough and that those reasons should be reasonably related to the insurer's economic and business purposes is immaterial. That is a decision only the Legislature can make. To incorporate wholesale provisions from the insurance code of a sister state in order to have the provision read as an appellate court might like to see it read is clearly unconstitutional. *State ex rel. Gunning v. Odell*, 58 Wn.2d 275, 278–79, 362 P.2d 254 (1961), *modified*, 60 Wn.2d 895, 371 P.2d 632 (1962).

> Absent a violation of due process or other specific constitutional guaranty, the courts cannot substitute their social and economic beliefs for that of the legislature.

(Footnote omitted.) 16 Am. Jur. 2d *Constitutional Law* § 316, at 842–43 (1979).

### ISSUE OF FACT IS PRESENT

This appeal does present an issue which I believe requires reversal. Whether Safeco stated its "actual reason"

for refusing to renew is a factual issue requiring resolution by trial.

Very little is presented by Armstrong with respect to this issue. The affidavit of Paul J. Burns includes the attached letter of the Armstrongs to the Insurance Commissioner. In that letter, facts are presented relating to the underinsured motorist claim and the opinion of the Armstrongs that that is the real reason for the refusal to renew. The actual reason for the nonrenewal is understandably important to the Armstrongs and they are entitled to the benefit of the doubt on this issue. The Burns affidavit was unchallenged and is, therefore, sufficient to raise the issue of the accuracy of the reasons stated by Safeco and thus is sufficient to defeat a summary judgment. I would remand the case only for a resolution of the question of whether Safeco complied with the statutory requirement of stating the actual reasons for the nonrenewal. If Safeco is found to have stated accurately the actual reasons, then it is entitled to refuse to renew the Armstrong automobile coverage. The remand should be for this limited purpose only.

Review granted by Supreme Court May 3, 1988.