[No. 54870–6.   En Banc.   December 15, 1988.]

JACK C. ARMSTRONG, ET AL, *Respondents,* v. SAFECO
INSURANCE COMPANY, *Petitioner.*

*Anderson, Hunter, Dewell, Baker & Collins, P.S.,* by
*William W. Baker* and *Jeffrey H. Capeloto,* for petitioner.

*Paul J. Burns,* for respondents.

*Donald M. Currie* on behalf of National Association of Independent Insurers and *William R. Hickman* on behalf of Public Employees Mutual Insurance Company, amici curiae for petitioner.

PEARSON, C.J.—When an insurance company issues a notice of nonrenewal pursuant to RCW 48.18.292, does the insurer's duty of good faith mandate that the statutorily required reason for nonrenewal be based upon some increased actuarial risk to the insurer?

Safeco Insurance Company (Safeco) first insured Jack and Linda Armstrong under a contract of automobile insurance issued in 1977. The policy provided coverage for 6–month periods and remained in effect following successive renewals until November 14, 1984. The policy made the following provisions for nonrenewal:

> If we decide not to renew this policy we will mail notice to you at the address stated in this policy at least 20 days before the end of the policy period. We may not refuse to renew the Liability or Collision coverage of this policy on the basis that you have made one or more claims under the:
> (1) Comprehensive coverage; or
> (2) Towing and Labor Costs coverages;
> of this policy.

On October 3, 1984, Safeco mailed a notice of nonrenewal to the Armstrongs. The notice stated that coverage would terminate on November 14, 1984, well within the time frame contemplated by both the contract of insurance and statute. The only explanation cited for nonrenewal was "Claims Frequency and the Unrevealed Speeding Cite for 65 in a 55 on 10–3–82." After receiving the notice of nonrenewal, the Armstrongs wrote a letter of complaint to the Washington State Insurance Commissioner (Commissioner).

In their letter to the Commissioner, the Armstrongs provided the following comment with respect to the speeding citation referenced in the notice of nonrenewal:

As for the speeding ticket, this is the only one my husband has had in his 30 plus years of driving; and no one ever asked us if we had any tickets, they just sent the renewal policy each year and asked us to pay the premium.

The Armstrongs went on to suggest an alternative explanation for Safeco's decision not to renew their automobile insurance policy:

Even though the above are the causes being cited for non–renewal, *we feel* the real reason is the following:— . . . Jack [Armstrong] was involved in an accident in December 1982 which has left him partially disabled even after extensive treatment and back surgery. The lady that ran her car into Jack's truck was underinsured. Therefore, a claim was filed against our Underinsured Motorist portion of the Safeco Policy, which has not yet been settled.

(Italics ours.)

Following inquiry by the Commissioner, Safeco subsequently elaborated on its reasons for nonrenewal in a letter to the Commissioner dated March 20, 1985, in which Safeco listed the following claims as support for nonrenewal in addition to the October 3, 1982, speeding citation:

June 1, 1980—Comprehensive—rock thrown up by passing vehicle, broke windshield.

January 1, 1982—Collision—car stolen and damaged in an accident.

December 4, 1982—Collision and PIP—claimant ran stop sign and struck insured's car.

January 28, 1984—Comprehensive—tires slashed.

February 25, 1985 [*sic*] [Most probably, the date should read 1984.]—Comprehensive—tires slashed.

April 18, 1984—Collision—insured struck by claimant.

In their amended complaint, the Armstrongs alleged a cause of action for "bad faith cancellation". Contrary to the title of the Armstrongs' cause of action, however, this is a case involving nonrenewal, not cancellation. In opposition

to Safeco's motion for summary judgment, the Armstrongs averred that none of the alleged grounds for nonrenewal were the result of any culpable conduct on the part of the Armstrongs:

> A review of the claims itemized in [Safeco's explanatory letter to the Commissioner] reveals that none of those claims arose as a result of any negligence on the part of the plaintiff. Three of the six claims presented over the seven year period were submitted under the comprehensive coverage endorsement. Two claims were uninsured motorist claims resulting from accidents caused by third party drivers and involving no negligence on the part of the Armstrongs. The remaining claim was presented under the collision coverage endorsement when the Armstrong vehicle was stolen and subsequently damaged. All of these claims were submitted prior to Safeco's final renewal of the Armstrong policy in May 1984.
>
> The speeding citation referred to in the notice of nonrenewal was received in October 1982, two years prior to the decision to refuse renewal. At least three policy renewals were granted at six month intervals between the October 1982 speeding citation and the October 1984 decision to non–renew.
>
> . . .
>
> Affiant [attorney for the Armstrongs] has represented plaintiff on uninsured motorist claims arising out of the December 1982 and April 1984 accidents . . . When the present lawsuit was filed neither of those claims had been settled. As of the date of this motion the first claim has settled and the second claim remains pending.

Considering these averments irrelevant to the issue of nonrenewal, the trial court granted Safeco's motion for summary judgment of dismissal.

# I
## "GOOD FAITH" OBLIGATION

Quite simply, the Armstrongs incorrectly argue that an insurer must renew absent culpable conduct on the part of the insured. RCW 48.18.292 places few restrictions on an insurance company's ability to deny renewal of an automobile insurance policy:

(1) Each insurer shall be required to renew any contract of insurance subject to RCW 48.18.291 unless one of the following situations exists:

(a) The insurer gives the named insured at least twenty days' notice in writing as provided for in RCW 48.18.291(1), that it proposes to refuse to renew the insurance contract upon its expiration date; *and sets forth therein the actual reason for refusing to renew* . . .

. . .

(2) Renewal of a policy shall not constitute a waiver or estoppel with respect to grounds for cancellation which existed before the effective date of such renewal.

. . .

(5) No insurer shall refuse to renew the liability and/or collision coverage of an automobile insurance policy on the basis that an insured covered by the policy of the insurer has submitted one or more claims under the *comprehensive,* road service, or towing coverage of the policy. Nothing in this subsection shall prohibit the non-renewal of comprehensive, road service, or towing coverage on the basis of one or more claims submitted by an insured.

(Italics ours.) On its face, all this statute requires prior to denying renewal is notice within the prescribed time period and a recitation of the "actual reason for refusing to renew".

█ Of course, inherent in any insurance transaction is the legislatively imposed duty of good faith:

The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. . . .

RCW 48.01.030. Nonetheless, there is simply no basis for the argument that this duty of good faith requires an insurer to renew in all instances where the insured has not engaged in an activity that increases the actuarial risk to the insurer. The Legislature simply did not intend to force an insurer to accept a new contract of insurance when it

adopted the good faith requirement. Any other interpretation renders the few restrictions in RCW 48.18.292 meaningless.

In a situation where there is an existing contract of insurance, and a duty on the part of the insurer to defend against claims, the duty of good faith requires the insurer to give equal consideration to the interests of the insured. *Tyler v. Grange Ins. Ass'n,* 3 Wn. App. 167, 473 P.2d 193 (1970). More recently, we analyzed the insurer's duty of good faith in *Tank v. State Farm Fire & Cas. Co.,* 105 Wn.2d 381, 715 P.2d 1133 (1986). *Tank* involved a third party claimant's right of action against an insurer who was defending under a reservation of rights. There, we held the insurer's duty is greater than the general duty of good faith enunciated in *Tyler,* and we imposed enhanced obligations that an insurer fulfills only if it meets specifically enumerated criteria. *Tank,* 105 Wn.2d at 388–89.

However, both *Tank* and *Tyler* are distinct from the case at hand. In those cases, the insurer was under a contractual obligation to provide coverage and a defense to the insured, who was in an extremely vulnerable position should the insurer fail to uphold its duties under the contract. In this case, however, the Armstrongs argue the duty of good faith forces an insurer to negotiate and accept a *new* contract of insurance. According to the Armstrongs' paradigm, this obligation continues for the duration of the insured's life. Such reasoning is not in line with our past decisions, nor in line with the Legislature's intent. An insurer's decision whether to renew a policy does not rise out of a contractual obligation, and it does not implicate an insured's vulnerable dependence upon the insurer.

A survey of case law of other jurisdictions reveals that absent legislative enactments, there is no duty imposed upon insurers to renew their policies:

Only in those cases in which the legislative branch has expressly regulated the insurer's right to refuse to renew policies have courts held that an insurer could not exercise that right arbitrarily and capriciously.

*Gautreau v. Southern Farm Bur. Cas. Ins. Co.*, 429 So. 2d 866, 869 (La. 1983) (no duty to renew property damage insurance); *Gahres v. Phico Ins. Co.*, 672 F. Supp. 249 (E.D. Va. 1987) (applying the law of Virginia in dicta, no duty to renew medical malpractice insurance); *Coira v. Florida Med. Ass'n*, 429 So. 2d 23 (Fla. Dist. Ct. App. 1983) (no duty to renew medical malpractice insurance). A well recognized treatise on insurance confirms our holding:

> Where there is no clause in the policy expressly granting a privilege or imposing a duty of renewal, neither party has any right to require a renewal. Thus, the rights of the parties under such a contract are mutual in the sense that neither is bound to renew the contract. And under such a policy the insurer may decline to renew the policy at the end of a premium payment period.

18 G. Couch, *Insurance* § 68:12 (2d ed. 1983).

As stated, the Legislature has in fact placed restrictions on an insurer's freedom to deny renewal. Yet, to say that the insurer's obligation to act in good faith applies to the renewal setting, which it does, is not to say the good faith obligation mandates renewal. Good faith does, however, place restrictions on an insurer's ability to deny renewal. First, an insurer must act with honesty as it is bound by good faith in all insurance transactions. RCW 48.01.030. Second, an insurer is specifically bound to state its "actual reason" for nonrenewal in its notice of nonrenewal. RCW 48.18.292(1)(a). Third, should that reason be based upon race, religion, sex, marital status, or certain handicaps, it would not be valid. RCW 48.30.300; WAC 284–30–572. Finally, an insurer may not base its nonrenewal decision upon a traffic accident or violation that occurred more than 3 years prior to the nonrenewal decision. WAC 284–30–500(3).

## II

### Legislative "Ambiguity"

Faced with an issue of first impression, the Court of Appeals concluded the word "actual" contained in RCW 48.18.292(1)(a) is ambiguous. *Armstrong v. Safeco Ins. Co.*,

50 Wn. App. 254, 748 P.2d 666 (1988). Perhaps unwilling to expand judicially on the good faith obligation, the court made the "ambiguity" determination based solely upon each party's ability to argue a distinct interpretation of the statute. Fortunately, such is not the test for determining the necessity of judicial construction. In essence, the result of the court's "interpretation" is to redefine the word "actual" to mean legally justifiable in light of underwriting principles that can be objectively linked to the probability of adverse effects upon the losses of the carrier. This simply is not what the statute says, nor what the Legislature intended. Were we to allow the decision of the Court of Appeals to stand, an insurance company would now be required to renew all policies of automobile insurance unless the insured had engaged in some conduct that increased the actuarial risk to the insurer.

The word "actual" is defined as "existing in fact or reality", or in a word, "genuine". *Webster's Third New International Dictionary* 22 (1981). From the face of the statute, then, the common person would understand the Legislature has required an insurance company electing not to renew under RCW 48.18.292(1)(a) to state the genuine reason for nonrenewal as opposed to a contrived pretense. The Legislature did not state that an insurance company must cite a "fair reason", or even a "justifiable reason", merely, the "actual reason". In fact, as previously quoted in subsection (5) of RCW 48.18.292, the Legislature has enumerated certain actions taken by an insured upon which an insurer may not rely in its decision not to renew. For example, a refusal to renew automobile insurance may not be predicated upon an insured's submission of a claim under the comprehensive portion of the policy. Had the Legislature intended the result reached by the Court of Appeals in this case, it could have listed further restrictions on an insurer's ability to refuse renewal. Until that time, this court simply may not impose such an obligation on insurers. Absent an

ambiguity, it is not the judiciary's function to "modify legislative enactments". *Stuart v. Coldwell Banker Comm'l Group, Inc.,* 109 Wn.2d 406, 414, 745 P.2d 1284 (1987).

Nevertheless, after locating the "ambiguity", the Court of Appeals inferred the meaning of our Legislature's "actual reason" by adopting a test explicitly imposed by the Maryland Legislature in a strikingly distinct statute. Since we hold the word "actual" in RCW 48.18.292(1)(a) is not ambiguous, there is no need to look for ways to infer the legislative intent. As noted by Chief Judge Scholfield, "[i]t is well settled that courts cannot read into a statute matters which are not there nor modify a statute by construction." "This is clearly judicial legislation." *Armstrong v. Safeco Ins. Co.,* 50 Wn. App. at 265 (Scholfield, C.J., concurring in the result). Thus, the lower court's construction of RCW 48.18.292(1)(a) invades the province of the legislative branch by imposing conditions not intended by statute. *State ex rel. Gunning v. Odell,* 58 Wn.2d 275, 362 P.2d 254 (1961), *modified,* 60 Wn.2d 895, 371 P.2d 632 (1962).

## III
### WAIVER

Finally, the Armstrongs contend that in making the decision not to renew, Safeco is estopped to rely upon those claims filed prior to the previous renewal decision. For support, the Armstrongs cite *Sentry Ins. v. Brown,* 424 So. 2d 780 (Fla. Dist. Ct. App. 1982). This argument, however, completely ignores RCW 48.18.292(2) which provides:

> Renewal of a policy shall not constitute a waiver or estoppel with respect to grounds for cancellation which existed before the effective date of such renewal.

As a result, Safeco did not waive the ability to rely upon past claims in making its decision not to renew, subject, of course, to the restriction limiting consideration of a driver's record to the previous 3 years. See WAC 284-30-500(3).

In the end, it was Safeco's obligation to state the actual reason for nonrenewal within the notice of nonrenewal. In order to meet this obligation, an insurer must list all of the bases for its decision. Safeco's notice in the case at hand merely stated, "Claims Frequency and the Unrevealed

Speeding Cite for 65 in a 55 on 10–3–82." However, when pressed by the Commissioner, following the Armstrongs' letter of complaint, Safeco responded with a more thorough list of specific claims. Contained in that list are three entries for "comprehensive" claims that admittedly served as partial justification for the nonrenewal decision. As stated, the Legislature has expressly excluded the existence of a comprehensive claim as an appropriate basis for denying renewal of automobile liability coverage. RCW 48.18-.292(5). As a result, it is apparent from the record that Safeco relied, at least in part, upon impermissible claims in making its determination.

Nevertheless, removing the three comprehensive claims leaves three separate claims for collision coverage and a speeding citation. All four of these items are within the permissible 3–year period Safeco may consider when making its decision. Furthermore, no legislative provision at this time precludes Safeco's reliance on these claims when making its renewal decision. Absent such legislation, this court may not impose additional obligations on Safeco's freedom to deny the Armstrongs' renewal.

In sum, we reverse the decision of the Court of Appeals and reinstate the order of the trial court granting the summary judgment of dismissal.

UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, CALLOW, DURHAM, and SMITH, JJ., and PETERSON, J. Pro Tem., concur.